## SIMMS v. GAFNEY.
### No. 6493.

Court of Civil Appeals of Texas. Texarkana.
Feb. 9, 1950.

Rehearing Denied March 2, 1950.

Carter, Gallagher & Barker, Dallas, Howard Barker, Dallas, Ben T. Warder, Jr., Dallas, for appellant.

Mayo & Heath, Dallas, Smith & Smith, Tyler, for appellee.

WILLIAMS, Justice.

This is a suit for damages for alleged malpractice prosecuted by appellant, H. L. Simms, against appellee, Dr. M. V. Gafney, d/b/a Gafney Clinic & Hospital. The jury was instructed to find for the defendant at the close of plaintiff's evidence, for the reasons as recited in the judgment, "there being no competent evidence produced to be the basis of a finding of negligence" and "no competent evidence to establish any causal connection between the alleged acts of negligence and the results of the diagnosis and treatment by defendant of plaintiff's wife."

Mrs. Simms, in an unconscious condition, was received in this hospital around 10:30 A.M., on February 28, 1948, shortly after an automobile accident in which a companion lady was killed. A foreign body, subsequently determined to be a piece of windshield glass, had cut across her face, severing the nose from the bone structure of the face, and had completely fractured and splintered the nasal bone. Her left eye was destroyed and the left side of the face substantially torn loose.

According to the testimony of Dr. Gafney he immediately examined her, administered first aid treatment and stimulation types of medicine. In the operating room he cleansed the wounds and used the standard procedure for treatment of hemorrhagic wounds by suturing them and the use of gauze and other appropriate materials. She was given a light anesthesia to prevent further shock. She received plas-

ma, a continuous oxygen and other stimulants.

Approximately fifty hours after Mrs. Simms had been received in above hospital, her husband caused her to be removed to the Mother Frances Hospital for treatment by Dr. Mitchell. About twenty-two hours after arrival in the latter hospital, X-ray pictures were taken by Dr. Mitchell which revealed the presence of a triangular-shaped piece of windshield glass approximately 1-½ inches by 2-½ inches in dimension behind the left eye. Its point had penetrated the brain structure to a depth between ½ and ¾ of an inch, or maybe more, according to Dr. Mitchell. In an operation later performed Dr. Mitchell removed the piece of glass and her left eye. She was confined to this hospital for about two weeks and thereafter to her bed at home for two months.

Dr. Gafney did not take an X-ray picture of Mrs. Simms, although fully equipped to do so. Under his testimony he ordered his attendants to take such pictures at the time he saw her for the first time on her arrival but upon further examination he cancelled the order and proceeded with the treatment as hereinbefore detailed. According to his diagnosis she was then in an unconscious condition; a state of shock; in a precarious condition; "thought she was going to die and while she was under my care I was concerned principally with controlling hemorrhages and sustaining life." He further testified that preparations had been made to take X-ray pictures at the time plaintiff caused her to be removed to the Mother Frances Hospital.

Appellant's case is predicated upon the proposition that Dr. Gafney was negligent in his failure to explore the wounds to ascertain whether or not a foreign object was lodged in same, that is, his failure to take X-ray pictures of Mrs. Simms' skull; that this failure to timely locate the presence of glass by the use of X-ray delayed the healing process and caused grease and dirt in the glass to set up an infection in the brain, or in the alternative such infection that may have commenced

was greatly aggravated and increased, all of which caused a deterioration and deadening of the brain cells. Plaintiff alleged that as a direct and proximate result of the alleged negligence her speech and ability to remember are now impaired; that her physical condition is so weakened that she is unable to perform her household work and now suffers from dizziness and pains in her head.

Plaintiff sought to establish his allegations upon the testimony of Dr. Mitchell, an allopathic physician. Dr. Gafney is an osteopathic physician. Both men, who have been licensed to practice in Texas, are reputable physicians and have been engaged for many years in the practice of medicine and surgery. The record reflects that the two schools of physicians do not associate with each other in the practice. Dr. Mitchell testified he knew nothing about the osteopath's practice. It appears that an osteopath is likewise unconcerned with knowing anything about the practice of an allopathic physician.

 It is the general rule "that the accused doctor is entitled to have his treatment of his patient tested by the rules and principles of the school of medicine to which he belongs, and not by those of some other school * * *." 41 Am.Jur. p. 203; Bowles v. Bourdon, Tex.Sup., 219 S.W.2d 779, 782. It is unnecessary to test the alleged incompetency of the testimony of Dr. Mitchell by this rule as urged by appellee or the alleged competency of portions of his evidence so urged by appellant. His testimony taken as a whole would not have supported a jury's findings that the failure to take X-ray pictures of the head at the time under the circumstances was a proximate cause of Mrs. Simms' alleged present physical ailments.

The pertinent testimony of Dr. Mitchell which bears upon the matter of the proximate cause is as follows: She entered the latter hospital at 2 P.M. March 1st. The next day around noon X-ray pictures were taken, and around 4:30 P.M. an operation was begun in which the piece of glass and her left eye were removed. The X-ray

picture allowed him to make the diagnosis and aided him in the operation. The glass was "in the eye orbit itself and the bulk of this piece of glass was in the anterior portion of the brain"; "anything that enters the brain cavity will set up an infection, and the presence of the foreign body in the brain is calculated to set up an infection, and the continued presence of such a foreign object in the brain, as I found in Mrs. Simms, is calculated to cause a greater infection the longer it remains there"; "the effect of this foreign body in the patient's brain was a constant source of irritating the tissue, and since it was a dirty foreign body, it was further infecting and incubation was being continued as long as it was there." "When I removed the foreign body, I observed infection in the wound generally, and the infection was aggravated by the continued presence of the foreign body in the brain." "I would not know how to measure the extent this infection was aggravated. * * * I do not say that the area of the brain which was infected was thereby deadened, so far as affecting the functions of the brain cells is concerned, but the functions of the brain would be damaged to some extent. I cannot say what effect the damaging of the brain tissues would have upon the function of those damaged areas, because that physiology is not thoroughly understood. Nevertheless that area has its physiology and whatever that physiology is would be interfered with. Had the foreign body been removed from the brain within twenty-four hours after admission to the hospital, as to whether the infection and damage to the brain would have been less, it would have had a better chance to get well quicker and there would have been less damage if it had got well quicker. It is a question whether damaged brain cells ever repair themselves, but it has been thought that they do not."

It is to be observed from this testimony of Dr. Mitchell that the extent of the aggravation of infection could not be measured; that the infected area of the brain was not deadened so far as the function of the brain cells are concerned; and that the

physiology of the damaged area is not known.

Dr. Mitchell's testimony may be summarized in his statement that "if an operation had been performed within twenty-four hours * * * it would have had a better chance to get well quicker and there would have been less damage if it had gotten well quicker." The record is absent any evidence that the penetration of her brain by the glass and the other injuries she received in the auto accident were insufficient to cause the ill effects now complained of; or that she would not have the present ill effects if the glass had been removed immediately after the accident. An affirmative finding by a jury that the diagnosis and treatment of the injuries by Dr. Gafney while in his hospital was the proximate and efficient cause of Mrs Simms' present ailment would rest upon speculation or conjecture.

As stated in Ewing v. Goode, C.C., 78 F. 442, 444, quoted with approval by the Supreme Court of Texas in Bowles v. Bourdon, 219 S.W.2d 779, 784, and applicable to the present record, "when the burden of proof is on the plaintiff to show that the injury was negligently caused by defendant, it is not enough to show the injury, together with the expert opinion that it might have occurred from negligence and many other causes. Such evidence has no tendency to show that negligence did cause the injury." And as observed by Bowles v. Bourdon, supra, likewise applicable here, "If the plaintiff would rest upon inferences rather than upon direct evidence, he meets the same rule. 'The proof must establish causal connection beyond the point of conjecture. It must show more than a possibility. Verdicts must rest upon reasonable certainty of proof. Where the proof discloses that a given result may have occurred by reason of more than one proximate cause, the jury can do no more than guess or speculate as to which was in fact, the efficient cause, the submission of such choice to the jury has been consistently condemned by this court and by other courts.' Ramberg v. Morgan, 209 Iowa 474, 218 N.W. 492, 498." See also Davis v. Gris-

som, Tex.Civ.App., 103 S.W.2d 466; Barker v. Heaney, Tex.Civ.App., 82 S.W.2d 417; 41 Am.Jur. pp. 236, 237; 33 Tex.Jur. (Physicians and Surgeons) Sec. 67.

The judgment of the trial court is affirmed.