John W. Donovan, Gano & Donovan, Houston, for appellant.

Joseph R. Alexander, Jr., Andrews & Kurth, Houston, for appellee.

Before EVANS, C.J., and WARREN and JACK SMITH, JJ.

Baudelia R. KEMP, Appellant,

v.

Dr. Craig HEFFELMAN, Appellee.

No. 01–85–0900–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 3, 1986.

## OPINION

EVANS, Chief Justice.

This is an appeal from a take-nothing summary judgment entered in a medical malpractice suit. We affirm.

The plaintiff, Baudelia R. Kemp, sued the defendant, Dr. Craig Heffelman, alleging that on August 13, 1978, she retained Dr. Heffelman to perform a surgical procedure on her left knee. She alleges that during the course of such treatment, Dr. Heffelman failed to exercise the degree of care "that reasonably prudent medical providers of such category would have exercised under the same or similar circumstances," particularly by: (1) wrongfully having the plaintiff walk on her left leg too soon after surgery; (2) failing to properly and adequately care for the surgical wound; (3) failing to properly treat the wound to prevent infection; and (4) failing to properly treat the infection.

Dr. Heffelman's affidavit supporting his motion for summary judgment states that Ms. Kemp was admitted to the hospital on August 13, 1979, and that the following day he performed a surgical procedure on her left knee which involved two incisions. Before the wounds were closed, they were washed with an antibiotic solution, and Ms. Kemp was also given antibiotics intravenously both during and after her surgery. The day after surgery, Dr. Heffelman ordered "crutch training and partial weight bearing with a knee immobilizer." He states that Ms. Kemp showed no signs of infection when he discharged her from the hospital on August 17, 1979, and that her wound "looked good." He again saw her on August 30, 1979, and noted that the wound had opened slightly, but did not appear to be infected. He prescribed that she wash her knee with hydrogen peroxide three times daily and at bedtime. On September 3, 1979, Ms. Kemp was readmitted to the hospital by another doctor, and her wound was later diagnosed as having "superficial staphylococcus aureus." On September 22, 1979, Ms. Kemp was discharged from the hospital with her surgical wound described as being "completely clean and dry." Dr. Heffelman further testified that he was familiar with the standard of care for the examinations, operative procedures, and treatment of Ms. Kemp, and it was his expert opinion that each one of the examinations, operative procedures, and treatments was in accordance with the "appropriate standard of care for such, and were the same examinations, operative procedures, and treatment which would have been performed by a reasonably prudent physician acting under the same or similar circumstances."

In her response to the motion for summary judgment, Ms. Kemp referred to various portions of Dr. Heffelman's deposition testimony, in which he states that he would not have discharged Ms. Kemp if she had evidenced symptoms of infection in her knee. Her response also referred to her own deposition testimony as follows:

Q. When you say "immediately after the operation," how soon after the operation did he ask you to walk on your let [sic]?

A. The next day. I believe it was the next day.

Q. And you say that that caused your incision to open.

A. Uh-huh.

"Page 39, Line 11 through 20"

Q. Did the wound come open?

A. Yes.

Q. Did it spread open? When did that happen?

A. The day I left the hospital or the day before.

Q. The day before you left the hospital, the wound was open?

A. Uh-huh.

Q. Then you're telling us that Dr. Heffelman discharged you with your wound open?

A. Yes.

"Page 36, Line 19 through Page 37, Line 1"

Q. Did you ever see any kind of pus or discharge coming from the incision?

A. Yes.

Q. When did you first notice that?

A. Ah-ah—

Q. Why don't you tell me in terms of days from discharge from the hospital?

A. Must have been between seven to ten days.

The testimony of Ms. Kemp was sufficient to raise an inference that the surgical incision opened the day she left the hospital or the day before. Her testimony did not, however, contradict the affidavit testimony of Dr. Heffelman that the surgical wound showed no sign of infection when he discharged her from the hospital, that her wound "looked good" at that time, and that in treating her wound, he had followed the proper standard of care.

 Dr. Heffelman's affidavit, which sets forth his qualifications as a medical doctor, his diagnosis and procedures in treating the plaintiff, and the applicable standard of care, and which states that he complied with such standard, is legally suf-

ficient to establish the absence of negligence. The affidavit is clear, positive, and direct. It is obviously credible and free from contradictions and inconsistencies, and it contains the type of testimony that Ms. Kemp could readily have controverted had she chosen to do so. Thus, Dr. Heffelman's testimony, though that of an interested party, was sufficient to negate all genuine issues of material fact regarding the plaintiff's allegations of negligence. Tex.R.Civ.P. 166–A(c). In the face of Dr. Heffelman's affidavit, Ms. Kemp was required to introduce competent controverting summary judgment proof to show the existence of a genuine issue of material fact regarding the issue of negligence. *See Swilley v. Hughes*, 488 S.W.2d 64 (Tex. 1972). This, she failed to do.

We overrule the plaintiff's points of error. The summary judgment is affirmed.