**ALLIED CHEMICAL CORPORATION, et al., Appellants,**

v.

**Jay DeHAVEN, et al., Appellees.**

**No. B14–87–038–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 12, 1988.

Rehearing Denied June 16, 1988.

Carol S. Butner, Roger Townsend, M.S. Ackerman, Houston, Jim Hughes, Rockport, for appellants.

John L. Russell, W. James Kronzer, Linda R. Harvey, Houston, for appellees.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Allied Chemical Corporation appeals from summary judgment granted Jay De-Haven, R. Foy Phillips, and Charles D. Reams, appellees. Finding that material fact issues exist, we reverse the grant of summary judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

The underlying law suit concerns three contracts, executed in 1974 by Steve Novak and by representatives of Allied Chemical Corporation ("Allied"), defendants in the trial court. All the contracts concerned the exchange and sale of chemicals used in the

production of fertilizer. The first two contracts, those appellees seek to enforce, were signed on September 28, 1974. A third contract was executed four days later, on October 2, 1974.

Appellees contend that Novak, in negotiating and in signing the contracts, was representing a partnership of four individuals: Jay DeHaven, Steve Novak, Foy Phillips and Charles Reams. DeHaven, the original plaintiff, alleged that after Allied had entered into two valid, written agreements with the partnership, Allied vice president L.M. Gambrell bribed Novak to execute a new contract with terms much more favorable to Allied, superseding the previous documents. DeHaven prayed that the trial court declare the later agreement to be void and enter judgment against Allied, Novak, and other defendants, jointly and severally, for an amount equal to the difference between that which would have been paid under the earlier contracts and that actually received by the partnership.

In its answer to the suit, Allied specifically denied that any partnership existed or that any payments were made to Novak with an improper motive. It averred that all its dealings were transacted with Novak individually and all payments made by Allied to him were made in good faith. Further, Allied affirmatively pleaded that if any enforceable agreements existed prior to the contract executed on October 2, 1974, those prior agreements were novated and extinguished by the express terms of the October 2 agreement.

During discovery, each of the four alleged partners, as well as the former vice president of Allied, L.M. Gambrell, and an Allied manager, I.W. Swisher, were deposed. Novak and Gambrell refused to testify, invoking their fifth amendment rights in response to every question. In response to an order of the trial court, Allied filed an affidavit stating that it had no corporate knowledge in addition to or different from that given by I.W. Swisher.

DeHaven moved for summary judgment against Allied based upon the pleadings, the affidavits, the deposition testimony, and the exhibits, including the three executed contracts, the written partnership agreement, and cancelled checks which traced the funds paid to Allied and disbursed by Allied. In its response to the motion, Allied asserted that there were issues of material fact precluding the grant of summary judgment on the claims of DeHaven and there were additional material fact issues on its affirmatively pleaded defense of novation. We agree.

The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Appellees have failed to meet this burden. In order to be entitled to judgment appellees had to establish as a matter of law (i) that a partnership existed on September 28, 1974, when the first two contracts were signed, (ii) that Novak signed the first two contracts on behalf of the partnership, not on behalf of himself as an individual, and (iii) that the third contract was not a novation of the first two contracts.

As proof of the existence of the partnership on September 28, appellees rely on a partnership agreement and on the deposition testimony of DeHaven and Phillips. The partnership agreement offered as summary judgment proof is dated October 2, 1974, four days after the contracts appellees seek to enforce were executed. It does not establish as a matter of law that the partnership existed on September 28, 1974. As for the deposition testimony, appellees assert that the statements of DeHaven and Phillips that the partnership was in existence by August 1974 are uncontroverted. They contend that even though the two are interested witnesses, summary judgment may be based on uncontroverted testimonial proof of an interested witness if the proof is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. Tex.R.Civ.P. 166a(c). Without doubt, DeHaven and Phillips are interested witnesses. However, we do not agree with appellee that their testimony as to the oral agreement could have

been readily controverted. The only individuals with personal knowledge of their intent to form a partnership are the four partners. Three of the four, DeHaven, Phillips, and Reams, stand to benefit from proof that it existed as early as August. The fourth, Novak, has refused to testify as to the partnership's existence or non-existence, invoking the fifth amendment. Allied cannot compel his testimony. Self-serving statements of interested parties, testifying as to what they knew or intended, do not meet the standards of Texas courts for summary judgment. *See Bessent v. Times–Herald Printing Col,* 709 S.W.2d 635 (Tex.1986); *Beaumont Enterprise & Journal v. Smith,* 687 S.W.2d 729 (Tex.1985) (dealing with interested party affidavits made to establish the absence of malice). Issues of intent and knowledge are not susceptible to being readily controverted and are inappropriate for summary judgment. *Bankers Commercial Life Ins. Co. v. Scott,* 631 S.W.2d 228, 231 (Tex.App. —Tyler 1982, writ ref'd n.r.e.) We find that the partnership agreement taken with the proof of the interested witnesses gives rise to a question of material fact as to when the four men agreed to become partners.

We next consider the related and more critical question: whether the summary judgment proof establishes as a matter of law that Novak executed the September 28 contracts as a representative of the partnership. In support of their position appellees rely upon the contracts, the deposition testimony of DeHaven and Phillips, and a document prepared by Allied.

Each contract bore the heading:

### EXCHANGE AGREEMENT

[number]
### STEVE NOVAK

In the body of the agreements, the contracting parties were designated as "Allied" and "Novak."

The contracts dated September 28, 1974, were executed in the following form:

ACCEPTED:

| /s/ Steve Novak | /s/ I. Swisher |
|---|---|
| STEVE NOVAK | ALLIED CHEMICAL CORPORATION |
| | By: I. Swisher, Director, Agricultural Sales & Supply |

Similarly, the contract dated October 2, 1974, was signed by Novak, without designation of a representative capacity, and by Allied. L.M. Gambrell's name without title was substituted for "I. Swisher, Director."

ACCEPTED:

| /s/ Steve Novak | /s/ L.M. Gambrell |
|---|---|
| STEVE NOVAK | ALLIED CHEMICAL CORPORATION By: L.M. Gambrell |

The four corners of the document make no reference to the partnership or to any of those claiming to be partners. From the face of the document, including its title, its body, and its signature, it appears to be a contract between Steve Novak, an individual, and Allied.

During his deposition, DeHaven was asked why the partnership's name was not mentioned on the contract. He responded, "When I brought up the question as to why, Steve said that Gambrell and Allied wanted to do business with an individual that they knew and not with a partnership that they didn't know. This was a demand made by Allied." The contracts together with this testimony of DeHaven certainly raise an issue as to the actual parties to the contract. Even if appellees' summary judgment proof were to establish the existence of a partnership and Allied's knowledge of that partnership as a matter of law, appellees have not proved as a matter of law that Allied agreed to contract with the partnership. Regardless of the desires of the partnership or the authority given to Novak by the partnership, Allied was free to refuse to enter a contract for hundreds of thousands of dollars with a business entity that could offer no documentary proof of its existence. This testimony of DeHaven does not establish conclusively that Novak signed the contract on behalf of the partnership. To the contrary, it tends to establish that DeHaven knew that Novak had contracted on behalf of himself rather than on behalf of the partnership.

■ In support of their motion for summary judgment, appellees further relied upon a document prepared by Allied and authenticated by Mr. Swisher at his deposition. It is entitled "Background Information Relative to Allied–Steve Novak Exchange (No. AX–566)." As evidence that Allied was dealing with the partnership, appellees quote the following from the document: "Both the superseded and final agreements were signed on behalf of the *other party* by Mr. Steve Novak." (Emphasis added.)

We do not find support for appellees argument in this quotation. It begs the seminal question: Who were the parties to the contracts? The first sentence of the document states: "Allied and Steve Novak, *an individual,* executed an exchange agreement on October 2, 1974." (Emphasis added). Reading the two sentences together we do not find conclusive proof that Allied contracted with Steve Novak in a representative capacity.

Appellees further rely on a second quotation: "Mr. Matthiesen [an Allied employee] states that he has no knowledge of any negotiations between Allied and *any of the parties* between the time of the above and the signing of the agreements on September 28, 1974." (Emphasis added.) This statement also must be read in the context of the document. The immediately preceding paragraph refers to Gardinier, a company which had also offered to buy anhydrous ammonia from Allied. As used, the term is ambiguous; it is just as probable that "parties" referred to Novak and Gardinier as it is probable that it referred to Novak and other individuals named nowhere else in the document.

In reviewing the grant of summary judgment, the appellate court must accept as true the proof in favor of the non-movant, indulge every reasonable inference and resolve all doubts in its favor. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 315 (Tex. 1987). We hold that the depositions and documentary evidence raise issues of material fact as to the existence of a partnership and as to the parties to the contract. Appellees have not met their burden of showing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Appellant's point of error, complaining of the grant of summary judgment, is sustained.

■ Although our previous findings are dispositive of this appeal, we further note that Allied pleaded an affirmative defense of novation. If the party opposing a summary judgment relies on an affirmative defense, it must come forward with summary judgment proof sufficient to raise an issue of fact on each element of the defense. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). Allied pleaded and presented proof that (i) there was a previous valid obligation (the September 28 contracts that appellees attempt to enforce), (ii) all parties agreed to a new contract (the October 2 contract signed by the same parties), and (iii) the old contract was extinguished (an express provision in the October 2 contract). Allied alleged that the October 2 contract was a good faith modification of the earlier agreements. The face of the documents show that Steve Novak was to supply urea from a different source under the September contract than under the October contract. Allied further alleged that the September contracts required Novak to purchase the urea from a higher priced supplier than that to be used in the October contract. Novak was thus enabled to make a larger profit under the October contract. In return, Allied was to receive greater consideration. An agreement modifying a contract needs no consideration to be binding if the modification is performed in good faith. Tex.Bus. & Com. Code Ann. § 2.209(a) and comment 2 (Tex. UCC) (Vernon 1968). Whether there was consideration for the modification or whether the modification was made in good faith are issues for the jury.

The grant of summary judgment was improper. We reverse the judgment and remand the cause to the trial court for further proceedings consistent with this opinion.