**Henry and Bertha CEDILLO, Surviving Parents of Lora Beth Cedillo, Minor, Deceased, Appellants,**

v.

**Larry JEFFERSON, M.D., Appellee.**

**No. 01–89–01167–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 3, 1991.

Rehearing Denied Jan. 31, 1991.

John William Donovan, Houston, for appellants.

Claude M. McQuarrie, III, Houston, for appellee.

Before EVANS, C.J., and DUNN and O'CONNOR, JJ.

## OPINION

EVANS, Chief Justice.

Plaintiffs, Henry and Bertha Cedillo, surviving parents of Lora Beth Cedillo, a minor, deceased, appeal from a take-nothing summary judgment in favor of the defendant, Larry Jefferson, M.D.

Plaintiffs assert two points of error: first, the trial court abused its discretion in denying their motion for a continuance of the summary judgment proceeding; and second, Dr. Jefferson's summary judgment proof is insufficient to support the summary judgment.

■ A ruling on a motion for continuance is within the sound discretion of the trial court. *State v. Wood Oil Distrib. Inc.*, 751 S.W.2d 863, 865 (Tex.1988). We may not reverse the trial court's ruling on a motion for continuance unless appellant shows a clear abuse of discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986).

Plaintiffs' child, Lora Beth Cedillo, died after surgery on July 17, 1983. On March 26, 1984, plaintiffs initiated this suit alleging medical malpractice. About three years later, on December 14, 1987, plaintiffs filed a "Joint Status Report" with the court, representing that discovery was not complete because of difficulties in obtaining expert medical witnesses. Plaintiffs advised the court they expected to have such witnesses within 60 to 90 days, and estimated that 10 to 12 months would be needed to complete discovery. In early 1988, the court notified plaintiffs the case would be dismissed for want of prosecution, and in response, on March 24, 1988, plaintiffs filed a motion to retain, stating that their counsel had contacted a medical consultant who had agreed to review the medical records. The court granted the motion to retain. On November 29, 1988, the trial court entered a docket control order, which among other things, required plaintiffs to designate all expert witnesses by July 3, 1989. On that date, July 3, 1989,

plaintiffs designated one expert medical witness, Dr. H. Barry Jacobs.

On August 3, 1989, defendant moved for summary judgment, which the court set for hearing on August 25, 1989. On August 11, 1989, the trial court ordered plaintiffs to file the written report of their medical expert on or before August 21, 1989. On August 21, 1989, plaintiffs withdrew their designation of Dr. Jacobs as an expert witness, asserting they had been unable to obtain a written report from him, "as requested by defendants, and ordered by this court." In their notice of withdrawal, plaintiffs substituted the name of Dr. James K. Martin, an expert witness. Plaintiffs also notified Dr. Jefferson that the court, on September 1, 1989, would orally hear their notice of withdrawal and motion to substitute the new expert witness. On August 24, 1989, plaintiffs filed their motion for continuance, attaching an unsigned copy of an affidavit prepared for Dr. Martin. The court heard Dr. Jefferson's motion for summary judgment on August 25, 1989, and after taking the matter under advisement, granted the defendant's motion on August 30, 1989. In the interim period, between the hearing of the motion and the court's announcement of its decision, plaintiffs, on August 28, 1989, filed a response to the motion for summary judgment, attaching the signed affidavit of the medical expert, Dr. James K. Martin.[1]

Plaintiffs cite Tex.R.Civ.P. 166a(f), which states:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

■ Here, plaintiffs contend they had only 15 days to obtain a medical expert's affidavit to controvert Dr. Jefferson's motion for summary judgment. Thus, they argue, the court abused its discretion in refusing to allow them sufficient time to obtain the affidavit of their substitute medical expert.

We overrule plaintiffs' contention. At the time Dr. Jefferson filed his motion for summary judgment, plaintiffs' lawsuit had been on file for almost five and one-half years. In their motion for continuance, plaintiffs contended only that the withdrawal of their expert witness, Dr. Jacobs, was "unexpected." Plaintiffs did not make any showing, in support of their motion for continuance, explaining why they had not, and could not, obtain an executed affidavit of their new expert witness, Dr. Martin, before the hearing of the defendant's motion for summary judgment. Under the circumstances reflected in the record, we cannot say the trial court abused its discretion in denying plaintiffs' motion for continuance. *State v. Crank*, 666 S.W.2d 91, 94 (Tex.1984), *cert. denied*, 469 U.S. 833, 105 S.Ct. 124, 83 L.Ed.2d 66 (1984); *Hernandez v. Heldenfels*, 374 S.W.2d 196, 202 (Tex. 1963); *Smith v. Christley*, 684 S.W.2d 158, 161 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); Tex.R.Civ.P. 252.

In their second point of error, plaintiffs contend Dr. Jefferson's affidavit is insufficient as a matter of law to support his motion for summary judgment. In this affidavit, Dr. Jefferson states that since July 1, 1982, he has been the Medical Director of Pediatric Intensive Care at Texas Children's Hospital in Houston. He states that on February 15, 1983, Dr. James E. Allison, III, consulted him regarding Dr. Allison's infant patient, Lora Beth Cedillo, who had been admitted to the hospital through the emergency room. Lora Beth suffered from a pulmonary condition common to premature infants, and this condition required her hospitalization.

Dr. Jefferson stated he attended Lora Beth from February 15, 1983, until the date of her death on July 17, 1983, and as her consulting pediatric intensive care specialist, he oversaw her general care and treat-

---

1. Because the record does not show that the court granted leave to file this late response, we must presume that the court did *not* consider the response in rendering its decision to grant the summary judgment. *INA of Texas v. Bryant*, 686 S.W.2d 614, 615 (Tex.1985).

ment, as well as her specialty care requirements for her pulmonary problems. As Lora Beth's condition warranted, Dr. Jefferson consulted with other specialists about her care. In April 1983, he referred Lora Beth to Dr. Barbara Reed, who performed diagnostic esophagogastroscopy, and then referred Lora Beth to Dr. William J. Porkorny, a pediatric surgeon. Dr. Porkorny performed a pyloromyotomy on April 29, 1983, and performed a fundoplication and gastronomy on June 22, 1983, to alleviate Lora Beth's gastrointestinal distress. During this last procedure, Dr. Porkorny inserted a gastroscopy tube, through which Lora Beth received her feedings and medications.

At that time, Lora Beth suffered decreased perfusion and had increased respiratory requirements, and Dr. Jefferson directed that she be intubated and placed on a central venous line. He said these procedures were completed promptly and without complications in the emergency room. He then ordered Lora Beth transferred to the pediatric intensive care unit, where therapy was continued. He consulted Pediatric Surgery Service to evaluate her abdominal distension, and that Service, with Dr. Porkorny, evaluated her abdominal symptoms and followed her gastrointestinal status. Dr. Jefferson said despite these efforts, Lora Beth died on July 17, 1983.

Dr. Jefferson stated he was familiar with applicable standards of ordinary care among pediatric intensive care specialists practicing in Harris County and in similar communities in 1983, and that under the specified clinical circumstances, it was an "acceptable standard of pediatric medical practice to consult a pediatric surgeon" for the purpose of "selecting, placing, and monitoring a pediatric patient's gastroscopy tube." Dr. Jefferson said this was especially true because of the availability of such specialists at the Texas Medical Center. He said during his care of Lora Beth, he consulted pediatric surgeons to monitor the status of her gastronomy tube, and his practice in that regard was in keeping with the standard of care stated above.

Dr. Jefferson said the care and treatment he provided to Lora Beth did not at any time fall short of the standard of medical care and treatment ordinarily exercised by pediatric intensive care specialists "in this community," and that it was his opinion, "based upon a reasonable degree of medical probability," that all the medical care and treatment he rendered Lora Beth from February 15, 1983, to July 17, 1983, "fully met or exceeded applicable standards of medical care prevalent in Houston, Texas, at that time."

■ The opinion of an interested medical expert may constitute competent summary judgment proof when it meets the criteria set forth in TEX.R.CIV.P. 166a(c). *Duncan v. Horning,* 587 S.W.2d 471, 473 (Tex.Civ. App.—Dallas 1979, no writ). To constitute competent summary judgment proof, the medical expert's testimony must be clear, positive, and direct, otherwise credible, free from contradictions and inconsistencies, and of a subject matter that the trier of fact must be guided solely by the opinion testimony of an expert. TEX.R.CIV.P. 166a(c). The evidence must also be such that it could have been readily controverted by the nonmovant. *Republic Nat'l Leasing Corp. v. Schindler,* 717 S.W.2d 606, 607 (Tex.1986); *Kemp v. Heffelman,* 713 S.W.2d 751, 752–53 (Tex.App.—Houston [1st Dist.] 1986, no writ); *Duncan,* 587 S.W.2d at 473.

We agree with plaintiffs that a medical expert's affidavit is insufficient if it merely sets forth the expert's conclusionary statement that he is familiar with the standard of care and that the treatment was within that standard. *Martin v. Petta,* 694 S.W.2d 233, 238 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.). We disagree, however, that Dr. Jefferson's statements constitute nothing more than "generalizations and conclusions about the applicable standard of care in this case."

Here, plaintiffs' petition alleged that the defendant was guilty of medical malpractice because he failed to exercise ordinary care in the diagnosis and treatment of Lora Beth Cedillo, and particularly, that he pro-

vided "poor surgical and medical care" as follows:

(a) Improper selection of gastrostomy tube on July 13, 1983;

(b) Failing to properly evaluate patient's condition on July 13, 1983, and July 15, 1983;

(c) Improper placement of gastrostomy tube on July 13, 1983;

(d) Discharging patient from hospital when patient's condition warranted admission on July 13 and July 15, 1983;

(e) Delay in hospitalization of patient during period July 13, 1983, and July 15, 1983.

To negate these allegations, as a matter of law, Dr. Jefferson was required to show that in treating his patient, Lora Beth Cedillo, he acted within applicable standards of ordinary care, "which a reasonable and prudent member of the medical profession would undertake...." *White v. Wah*, 789 S.W.2d 312, 317 (Tex.App.—Houston [1st Dist.] 1990, no writ), citing *Hood v. Phillips*, 554 S.W.2d 160, 165 (Tex.1977).

We conclude that Dr. Jefferson's affidavit was sufficient to prove the applicable standards of medical care for a pediatric intensive care specialist in the community where the treatment occurred, and to establish, absent controverting evidence, that his conduct was in accordance with such standards. *See Hammonds v. Thomas*, 770 S.W.2d 1, 2 (Tex.App.—Texarkana 1989, no writ).

In essence, Dr. Jefferson's affidavit showed he was not involved in any procedures during Lora Beth's hospitalization that might have caused the physical injuries alleged in plaintiffs' petition. He specifically denied that he participated in the selection, insertion, or monitoring of the patient's gastroscopy tube. His affidavit further showed he had acted within applicable standards of care by consulting with and seeking the advice and assistance of other medical experts who had greater expertise in the treatment of Lora Beth's specific medical problems.

Dr. Jefferson's affidavit reflects that when he first suspected his patient was suffering from pyloric stenosis, he referred her to a specialist to confirm that diagnosis. He then referred his patient to a pediatric surgeon, who performed a pyloromyotomy on April 29, 1983. When the patient continued to vomit after this surgery, the pediatric surgeon performed a fundoplication gastrostomy on June 22, 1983, in an attempt to alleviate the patient's gastrointestinal distress. During that procedure, the surgeon inserted a gastrostomy tube through which the patient thereafter received her feedings and medications. Dr. Jefferson's undisputed testimony shows that he took no part in any of these procedures and that his participation was solely as a referring physician. His testimony conclusively established that, under the clinical circumstances enumerated in his affidavit, he acted within acceptable standards of medical practice in consulting a pediatric surgeon for the purpose of selecting, placing, and monitoring the gastroscopy tube. His testimony is also undisputed that he did, in fact, consult pediatric surgeons to monitor the status of the patient's gastroscopy tube, and that his conduct in that regard was in keeping with the acceptable standards of care.

Dr. Jefferson's testimony shows that his patient was discharged from the hospital on July 8, 1983, and that she then had a gastrostomy tube in place and was receiving respiratory support through an oxygen concentrator by nasal cannula. He states that the patient returned to the hospital on July 13, 1983, where she was seen in the emergency room, and that he was not involved in that care.

He states that on the morning of July 15, 1983, he saw the patient at the hospital's outpatient department, and his evaluation of her respiratory and general status showed that she was stable and not in distress. At Dr. Jefferson's request, the pediatric surgeon then evaluated the gastrostomy tube, and indicated he had found it to be positioned properly. After the completion of that appointment, the patient returned home with her parents and nurse.

Absent any evidence to the contrary, it must reasonably be inferred from Dr. Jefferson's testimony that he and Dr. Porkony, the pediatric surgeon who placed the gastrostomy tube in the patient, acted in accordance with the applicable medical standards in diagnosing and treating the patient's condition, and in deciding that the circumstances did not warrant further treatment after the patient's discharge from the hospital. Therefore, based on the uncontradicted evidence, we must conclude, as a matter of law, that Dr. Jefferson acted in accordance with applicable standards of medical care in providing diagnosis and treatment for his patient. There is no suggestion that Dr. Jefferson's referral of the patient to other physicians for diagnosis and treatment was in anyway improper, and his testimony conclusively shows either proper action on his part or his non-involvement in the particular procedures about which plaintiffs complain.

In *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied), the doctor's affidavit stated he was familiar with the treatment used, that it was standard medical practice to perform such a surgery when the patient exhibited such problems, and that he had treated other patients using the same surgery. He also explained what he did in the surgery, said it was standard practice for other surgeons to help in such a procedure, and that he was familiar with the applicable standard of care. *Id.* Here, as in *Tilotta*, the doctor's affidavit stated that he had evaluated the patient's condition, that it was standard procedure to have another physician also evaluate and treat the patient's condition, and that he was familiar with the applicable standard of care. In all essential purposes, the two affidavits are nearly identical in their import.

We accordingly hold that Dr. Jefferson's affidavit conclusively negates two essential elements of the plaintiffs' cause of action: (1) the alleged breach of the applicable standards of care; and (2) any reasonably close causal connection between the alleged breach of the applicable standards of care and the patient's death. This summary judgment proof, while readily controvertible, was not controverted by any summary judgment proof offered by the plaintiffs.

We affirm the trial court's summary judgment.

O'CONNOR, J., dissents.

O'CONNOR, Justice, dissenting.

I dissent. I do not believe the affidavit of Larry Jefferson proves, as a matter of law, that he was not negligent.

Plaintiffs' petition alleged that Jefferson was guilty of medical malpractice because he did not exercise ordinary care in the diagnosis and treatment of Lora Beth Cedillo. In particular, the plaintiffs allege Jefferson provided "poor surgical and medical care" for the following reasons:

Jefferson did not properly evaluate the patient's condition on July 15, 1983;

Jefferson discharged the patient from the hospital when the patient's condition warranted admission on July 15, 1983; and

Jefferson delayed hospitalizing the patient during the period July 13 to July 15, 1983.

To negate these allegations as a matter of law, Jefferson must show that he acted within applicable standards of ordinary care among pediatric intensive care specialists practicing in Harris County, and in similar communities, at the time of the occurrence. See *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

The majority states that Jefferson's affidavit showed defendant was not involved in any procedures during Lora Beth's hospitalization that might have caused the physical injuries alleged in the plaintiffs' petition. Yet, plaintiffs' allege in their petition that it was Jefferson who decided on July 15 that Lora Beth's condition did not warrant further hospitalization. Jefferson's affidavit does not prove, as a matter of law, that he was not negligent in discharging Lora Beth on July 15.

As both an interested witness and an expert witness, Jefferson's affidavit must

be clear, positive, direct, credible, and free from contradiction, and must present the type of evidence that can be easily controverted. TEX.R.CIV.P. 166a(c); *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex.1989). The supreme court has recently told us that a summary judgment is inappropriate if the credibility of the affiant is likely to be a dispositive factor in the resolution of the case. *Casso*, 776 S.W.2d at 558. Here, Jefferson's statement that Lora Beth's condition did not warrant further hospitalization will be the critical issue at trial.

Jefferson states that on the morning of July 15, 1983, he saw the patient at the hospital's outpatient department, and his "evaluation of her respiratory and general status showed that she was stable and not in distress." The affidavit continues, "After the completion of that appointment, the patient returned home with her parents and nurse." In the affidavit, Jefferson does not state who discharged Lora Beth on July 15. As such, the affidavit does not even reach the issue of negligent discharge and failure to timely hospitalize, two of the issues in the lawsuit.

### 1. Failure to properly evaluate

The plaintiffs contend that Jefferson did not evaluate properly Lora Beth's condition on July 15, 1983. The only evidence pertaining to Jefferson's evaluation on July 15 was Jefferson's self-serving statement, "My evaluation of her respiratory and general status showed that she was stable and not in distress."

To prove facts in the affidavit of an interested person or an expert witness, the matters in the affidavit must be clear, positive, direct, credible, or free from contradiction, and be easily controverted. TEX.R. CIV.P. 166a(c). If the facts in the affidavit are not easily controverted, the affidavit will not support a summary judgment. *Casso*, 776 S.W.2d at 558.

The issue of Jefferson's evaluation of Lora Beth's condition on July 15 is not easily controverted. Generally, a person's knowledge is not susceptible to being readily controverted. *Bankers Commercial Life Ins. Co. v. Scott*, 631 S.W.2d 228, 231 (Tex.App.—Tyler 1982, writ ref'd n.r.e.). Self-serving statements of an interested party, testifying as to what the party knew, are not readily controverted and will not support a motion for summary judgment. *Allied Chem. Corp. v. DeHaven*, 752 S.W.2d 155, 158 (Tex.App.—Houston [14th Dist.] 1988, writ denied).

The majority relies on *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied) to affirm this judgment. There is a significant difference in the two cases. In *Tilotta*, the affidavit of the defendant-doctor was corroborated by the affidavit of another doctor. Here, we have no corroborating evidence.

I think this case is more closely analogous to *Mosaga, S.A. v. Baker & Botts*, 780 S.W.2d 3, 4 (Tex.App.—Eastland 1989, no writ).[1] Mosaga employed the law firm of Baker & Botts to handle a real estate transaction, and the law firm prepared a "Referral Services Agreement." Later, a party to the real estate transaction sued Mosaga because the agreement violated the Deceptive Trade Practices Act and the Texas Real Estate License Act. Mosaga filed a third-party action against Baker & Botts for preparing documents for the real estate transaction without telling him that the agreement was improper or illegal. Baker & Botts filed a motion for summary judgment with supporting affidavits, listing in detail the work provided to Mosaga, and stating that the attorney "did not act below" the standard of legal care. *Id.* at 5. Mosaga, the nonmovant, filed a response to the summary judgment but did not file any summary judgment evidence. In the response, Mosaga merely repeated the allegations of negligence from the petition that Baker & Botts should have informed Mosa-

---

1. The *Mosaga* case was a case transferred from the docket of the First Court of Appeals to the Eastland Court of Appeals pursuant to TEX.GOV'T CODE ANN. § 73.001 (Vernon 1988). Because this case arose in this district and was filed in this Court, we should assume the Eastland Court of Appeals applied the decisions of this Court and thus, we should be bound by the decision of *Mosaga* as a opinion issued by this Court.

ga if the agreement was improper or illegal. The Eastland court held that the allegations were sufficient, without any summary judgment proof, to preclude summary judgment. The court held that legal malpractice is a question of fact, not law. *Id.* at 6.

The allegations of negligence by the former client in *Mosaga* are comparable to the allegations of the plaintiffs here. The nonmovant's allegation of negligence was that the attorney should not have prepared the legal document if the legal document was improper or illegal. The allegations here are that Jefferson should not have discharged Lora Beth and should have admitted her on July 15.

### 2. Discharging the patient on July 15

The only summary judgment evidence to negate negligent discharge on July 15 is the one sentence in Jefferson's affidavit that states: "After the completion of that appointment, the patient returned home with her parents and nurse." In the affidavit, Jefferson did not even admit to discharging Lora Beth. From his one sentence, we can only conclude that Lora Beth left the hospital; we cannot discern that Jefferson made any decision about her leaving.

Because the affidavit does not even reach the issue of negligent discharge of Lora Beth, it cannot prove as a matter of law that Jefferson was not negligent in discharging her.

### 3. Delay in hospitalization on July 15, 1983

The negligence in the delay in the hospitalization is the other side of the issue of failure to hospitalize. Again, because Jefferson's affidavit does not address the decision to hospitalize Lora Beth on July 15, it cannot prove as a matter of law that Jefferson was not negligent when he did not hospitalize her.

We should reverse the trial court's summary judgment.