Daniel M. BROWN and Sharon Brown, Individually and as Next Friend of Michael David Hobbs, Appellants,

v.

Jerry BETTINGER, M.D., Appellee.

No. 09–93–326 CV.

Court of Appeals of Texas, Beaumont.

Submitted April 21, 1994.

Decided Sept. 8, 1994.

Linda G. Cryer, Houston, for appellants.

John E. Spalding, Hanen, Alexander & Spalding, Ralph Burnham, Timothy D. Riley, Floyd, Taylor & Riley, Houston, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BURGESS, Justice.

This is a summary judgment case. We reverse. Daniel M. Brown and Sharon Kay Brown, Individually and as Next Friend of Michael David Hobbs, ("the Browns") filed their original action against Dr. Jerry Bettinger, M.D.,[1] on September 11, 1992, for damages allegedly sustained as a result of medical malpractice. The Browns alleged Dr. Bettinger was negligent in his care and treatment of Sharon Brown, in September 1990. Dr. Bettinger filed a motion for Summary Judgment which was granted on October 27, 1993. Dr. Bettinger first treated Sharon Brown on September 12, 1990. She had been examined in the emergency room of Medical Center Hospital in Conroe, Texas, by Dr. John Connor, who then requested Dr. Bettinger to consult on Ms. Brown's case. Ms. Brown complained of severe headaches, nausea, vomiting and double vision. Dr. Bettinger took a medical history from Ms. Brown and then proceeded with physical examination. Following the physical examination, Dr. Bettinger reviewed the diagnostic studies which had previously been performed on Ms. Brown, including an MRI scan, blood

---

1. A suit against co-defendant Medical Center Hospital was severed at the trial court level.

tests and urinalysis. According to Dr. Bettinger's affidavit, the Browns were informed that a spinal tap would be necessary to rule out subarachnoid hemorrhage. Dr. Bettinger's affidavit also provides that, prior to performing the spinal tap, the Browns were advised of the potential complications associated with a spinal tap and that having this knowledge, Ms. Brown elected to undergo the spinal tap procedure.

Dr. Bettinger first attempted a spinal tap at the L4–5 interspace, but was unable to enter the subarachnoid space. Dr. Bettinger then moved the spinal tap to the L5–S1 space, but was still unable to access the subarachnoid space. Ms. Brown was then taken to the radiology department where with the aid of fluoroscopic guidance, bloody spinal fluid was obtained. According to Dr. Bettinger, Ms. Brown suffered no complications, was able to move her legs, and had no sensory disturbance other than soreness in her back from the needle punctures.

According to Ms. Brown's affidavit, Dr. Bettinger performed three separate spinal taps. Ms. Brown contends that when the spinal needle was inserted a second time, "I experienced excruciating pain in my lower back and down the back of my entire left leg to my feet. I immediately began hollering in pain. When Dr. Bettinger was finally able to remove the needle it was bent. Dr. Bettinger then asked for another spinal needle. Dr. Bettinger then inserted the needle a third time and removed it. By then, the pain in my lower back and down the back of the left leg was throbbing."

The Browns bring a single point of error: "The Court erred in granting Appellee Bettinger's Motion for Summary Judgment because there was controverting medical testimony as to whether Appellee breached the applicable standards of care creating a genuine issue of material fact." Dr. Bettinger responds via three separate reply points contending: he met his burden of proof by showing no genuine issue of material fact existed with regard to the Browns' alleged cause of action; the summary judgment proof offered by the Browns failed to adequately controvert his summary judgment proof; and the Browns failed to address all possible grounds

upon which the trial court may have granted summary judgment and therefore, because the trial court's order does not specify the particular grounds, the summary judgment must be upheld on any supportable grounds.

As to the last argument, a point is sufficient if it directs the attention of the court to the error about which complaint is made. TEX.R.APP.P. 74(d). Furthermore, a substantial compliance with the rules will suffice in the interest of justice. TEX.R.APP.P. 74(p). The Browns' point sufficiently points out their belief that Dr. Oppenheim was qualified as an expert and his affidavit set out the standard of care, the breach and the causation.

■ The standard for reviewing a summary judgment as established in *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–549 (Tex.1985): provides a three pronged requirement, a movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law; in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in their favor.

■ Pursuant to Texas Rule of Civil Procedure 166a(c), a defendant's motion for summary judgment should be granted if the summary judgment evidence establishes, as a matter of law, that there is no genuine issue as to any material fact with respect to one or more of the essential elements of plaintiff's cause of action. *Citizens First National Bank v. Cinco Exploration Co.,* 540 S.W.2d 292, 294 (Tex.1976); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). Where a movant establishes, as a matter of law, that any one essential element of plaintiff's cause of action does not exist, the movant is entitled to prevail on its motion for summary judgment. *See Rosas v. Buddies Food Store,* 518 S.W.2d 534, 537 (Tex.1975).

■ Dr. Bettinger, in support of his motion for summary judgment, submitted his personal affidavit as summary judgment evi-

dence. For a defendant/physician's affidavit to be considered competent summary judgment evidence, such affidavit must state: the physician's qualifications; the services performed for the patient over the treatment period; that the physician met the standard of care; that the affidavit contains specific denials of each of the allegations of negligence contained in appellants' petition; that the physician's opinion be based upon a reasonable degree of medical probability; and that no act or omission on the physician's part caused any damage to the plaintiff. *See Duncan v. Horning,* 587 S.W.2d 471 (Tex. Civ.App.—Dallas 1979, no writ). Dr. Bettinger's affidavit specifically addressed each and every allegation of negligence asserted by appellants.

 In order to prevail in a medical malpractice case, a plaintiff must establish: a duty requiring the health care provider to conform to a certain standard of conduct; the applicable standard of care and its breach; an injury; and a reasonably close causal connection between the breach of that standard of care and the harm. *Tilotta v. Goodall,* 752 S.W.2d 160, 161 (Tex.App.— Houston [1st Dist.] 1988, writ denied); *Wheeler v. Aldama–Luebbert,* 707 S.W.2d 213, 217 (Tex.App.—Houston [1st Dist.] 1986, no writ). In medical malpractice cases, such as our present case, the trier of fact is guided solely by the opinions of experts. *See Hart v. Van Zandt,* 399 S.W.2d 791, 792 (Tex. 1965); *Cedillo v. Jefferson,* 802 S.W.2d 866, 869 (Tex.App.—Houston [1st Dist.] 1991, writ denied). Expert testimony, even when provided by an interested party, is enough to support summary judgment. *See White v. Wah,* 789 S.W.2d 312, 317 (Tex.App.—Houston [1st Dist.] 1990, no writ). To defeat Dr. Bettinger's Motion for Summary Judgment, the Browns were required to produce competent expert testimony controverting the expert opinion of Dr. Bettinger. *See Shook v. Herman,* 759 S.W.2d 743, 747 (Tex.App.— Dallas 1988, writ denied). In response to Dr. Bettinger's Motion for Summary Judgment, the Browns filed a response and attached the affidavit of Elliott B. Oppenheim, M.D. The Browns contend that Dr. Oppenheim's affidavit constituted adequate expert controverting

testimony to the Bettinger affidavit. Dr. Oppenheim's affidavit reads as follows:

My name is Elliott B. Oppenheim, MD. I was licensed in the State of Washington between 1974 and 1992 and practiced medicine as a family physician and emergency physician between those years. I was Board Certified by the American Board of Family Practice.

I have reviewed the following records: an affidavit of Sharon Brown as to her version of the events leading up to her injury on September 12, 1990, the medical records on Dr. Bettinger on Sharon Brown, Medical Center Hospital records on Sharon Brown, and subsequent medical treatment of Sharon Brown at the University of Texas Medical Branch. My opinions expressed are to a reasonable degree of medical probability.

I am familiar with the applicable standard of care for the diagnosis and treatment [sic] of the symptoms Sharon Brown exhibited. I am also familiar with the applicable standard of care for the medical procedures that Dr. Bettinger provided for Sharon Brown at Medical Center Hospital.

Mrs. Brown saw Dr. Bettinger on 12 September 1990. She suffered from extreme headache, vomiting, nausea, and double vision and the right eye was deviated laterally. Dr. Bettinger performed a series of three spinal taps. During the second tap, the patient experienced lower back pain radiating down the posterior aspect of her left leg extending to her feet. The patient subsequently began suffering from throbbing pain down her back and into her left leg.

As a result of this traumatic series of spinal taps, the patient sustained an herniated disc which necessitated a L5–S1 diskectomy and laminectomy in April, 1991, with another laminectomy in February, 1993.

The standard of care requires that when a spinal needle is inserted, it should be appropriately positioned so that the needle may pass without trauma into the subarachnoid space. This was not done and resulted in injury to this patient. This was

a breach in the standard of care and caused the herniated disc.

Dr. Bettinger argues that Dr. Oppenheim's affidavit is not competent summary judgment evidence for it fails to establish his qualifications as an expert. He supports this conclusion based upon Dr. Oppenheim's failure to state he had "any training whatsoever in the field of neurology or that he has ever performed a spinal tap." He also couches his argument in terms of the "same school of practice" requirement for controverting evidence.

This requirement was enunciated in *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779 (1949), when the court stated: "It is definitely settled with us that a patient has no cause of action against his doctor for malpractice ... unless he proves by a doctor of the same school of practice as the defendant...." *Id.* at 782. The case, however, did not turn on the competency of the expert witnesses, but on their failure to establish proximate cause.

The later case of *Hart v. Van Zandt,* 399 S.W.2d at 791, discussed the issue. It was a malpractice case arising out of a laminectomy and disk removal. At the close of the plaintiff's evidence, the trial court instructed a verdict for the defendant. An osteopath had testified for the plaintiff. The defendant's motion raised the issue of the "doctor of same school of practice as defendant." The court cited *Bowles* for the "same school of practice" requirement. They then cited *Porter v. Puryear,* 153 Tex. 82, 262 S.W.2d 933, 936 (1953), *judgment set aside,* 153 Tex. 82, 264 S.W.2d 689 (1954), for the proposition that if the particular inquiry is common to and equally recognized and developed in all fields of practice, a qualified surgeon of any recognized school of medicine may give evidence on the matter. Hence the court held an osteopath could give an opinion on a medical doctor's performance and reversed the case.

Many of the cases relied upon by Dr. Bettinger are distinguishable. *Simms v. Gafney,* 227 S.W.2d 848, 849 (Tex.Civ.App.—Texarkana 1950, writ ref'd n.r.e.), is an instructed verdict case, not one involving summary judgment. It was a malpractice action against an osteopathic physician for failing to X-ray the head of the plaintiff's wife. The plaintiff used an allopathic physician as an expert witness. The court of appeals stated the general rule of "same school" but noted it was "unnecessary to test the alleged incompetency of the testimony" because "[H]is testimony taken as a whole would not have supported a jury's findings that the failure to take X-ray pictures ... was a proximate cause...." While *Shook v. Herman,* 759 S.W.2d at 747, was a summary judgment case, it was one where the plaintiff filed no expert controverting affidavit. Likewise, *Tilotta v. Goodall,* 752 S.W.2d at 160, was a summary judgment case. The original motion for summary judgment was denied but it was later granted on a motion to reconsider. The plaintiff had no controverting affidavit from any expert. She only had a hearsay statement in her deposition that two doctors had told her the surgery performed by the defendant caused thyroid damage. This testimony was objected to in the motion to reconsider. Thus this became an uncontroverted expert testimony case. *Cedillo v. Jefferson,* 802 S.W.2d at 866 involved a motion for continuance of a summary judgment hearing in order to get a medical expert. There was no controverting expert affidavit properly before the court and the court of appeals held there was no abuse of discretion in failing to grant the continuance. *Nail v. Laros,* 854 S.W.2d 250, 252–253 (Tex.App.—Amarillo 1993, no writ), was a summary judgment case where malpractice was alleged against an orthopedic surgeon due to postoperative infection. The plaintiff relied upon the deposition of an orthopedic surgeon and the affidavit of a pharmacist. The court of appeals held the orthopedic surgeon did not testify as to any breach of the standard of care and the pharmacist was not a competent expert witness as to the standard of medical care.

*Milkie v. Metni,* 658 S.W.2d 678 (Tex. App.—Dallas 1983, no writ), is a case Dr. Bettinger says is factually similar; it involved a semi-retired family physician as the plaintiff's expert versus a thoracic and cardiovascular surgeon defendant. The plaintiff's doctor testified he had not done surgery

in years, had never done heart surgery, had no past experience in treatment of coronary disease and that by-pass surgery was out of his field. Before ruling on the motion for summary judgment, the trial court held the family physician was not competent to testify as an expert on coronary by-pass surgery.

Dr. Oppenheim states the standard of care; unfortunately, he does not define "trauma". However, the dictionary does; trauma is "an injury or wound to a living body caused by the application of external force or violence." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (UNABRIDGED). It is certainly a reasonable inference that Dr. Oppenheim has some knowledge or experience in spinal taps if he is familiar with the standard of care. Furthermore, the defendant leveled no objections before the trial court as to Dr. Oppenheim's qualifications as an expert or to any portion of his affidavit.

Dr. Bettinger argues that Dr. Oppenheim failed to establish proximate cause. Dr. Oppenheim's statement is quite clear: "This was not done and resulted in injury. . . ." He is referring to the failure to properly position the needle into the subarachnoid space causing injury to Mrs. Brown. While the magic words of proximate cause are not used, a reasonable inference from the word "result" is causation.

We hold Dr. Oppehheim's affidavit to be competent summary judgment evidence; it successfully controverts Dr. Bettinger's affidavit, therefore there are genuine issues of material fact. The summary judgment is reversed and remanded.

REVERSED AND REMANDED.

WALKER, Chief Justice, dissenting.

I respectfully dissent to the reversal and remand of this cause and would affirm summary judgment.

Appellants have failed to address all possible grounds upon which the trial court may have granted summary judgment. In *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989), our Texas Supreme Court held that when a trial court's order granting summary judgment does not specify the ground or grounds relied upon for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. This Ninth Court of Appeals recognized that rule in *Netterville v. Interfirst Bank,* 718 S.W.2d 921, 922 (Tex.App.—Beaumont 1986, no writ). When an order granting summary judgment does not specify the particular grounds the trial court sustained, on appeal, the summary judgment opponent must defeat each summary judgment ground urged by the movant, otherwise the appellate court must uphold the summary judgment on any ground that finds support. *Goston v. Hutchison,* 853 S.W.2d 729 (Tex.App.—Houston [1st Dist.] 1993, no writ), citing *Carr,* 776 S.W.2d at 569.

In the present case, the Trial Court's Order granting summary judgment in favor of Dr. Bettinger did not specify the grounds upon which the summary judgment was based. The Browns' sole point of error is limited to the contention that the trial court erred in granting the summary judgment because there was controverting expert testimony relating to the applicable standard of care. Proximate cause is one of the essential elements of plaintiff's medical malpractice cause of action. Appellants do not address the possibility that the trial court may have found that appellants failed to establish proximate cause, an essential element of their cause of action. Where summary judgment may have been based on a ground not specifically challenged by the appellant, the reviewing court is required to let the judgment stand, if there is no general assignment of error that the trial court erred in granting summary judgment. *TEC Electric Company v. AMFAC Distribution Corporation,* 581 S.W.2d 508, 511 (Tex.Civ.App.—Tyler 1979, no writ).