Demois F. TILOTTA, Appellant,

v.

Robert J. GOODALL, Appellee.

No. 01–87–00991–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 12, 1988.
Rehearing Denied June 30, 1988.

Stephen Gano, Gano & Donovan, P.C., Houston, for appellant.

Barbara L. Bowen, Butler & Binion, Houston, for appellee.

Before JACK SMITH and COHEN, JJ., and STEPHEN F. PRESLAR, Senior Judge, Sitting by Assignment.

OPINION

STEPHEN F. PRESLAR, Senior Judge, Sitting by Assignment.

This is a medical malpractice action brought by Demois F. Tilotta (hereafter "Tilotta") for alleged negligent surgery performed by Dr. Robert J. Goodall (hereafter "Goodall"). The trial court denied Goodall's motion for summary judgment, but on motion to reconsider, granted summary judgment in favor of Goodall, and ordered that Tilotta take nothing by reason of her suit. We affirm.

The record reflects that Tilotta neither filed a response to Goodall's motion to reconsider summary judgment, nor appeared at the hearing thereon. However, she did file a response to Goodall's original motion for summary judgment.

■ A defendant who moves for summary judgment has the burden of showing as a matter of law that no material issue of fact exists as to the plaintiff's cause of action. *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165 (Tex.1987). This may be accomplished by showing that at least one element of the plaintiff's cause of action has been established conclusively against the plaintiff. *Gray v. Bertrand,* 723 S.W.2d 957 (Tex.1987).

■ The essential elements of a plaintiff's malpractice cause of action are as follows: (1) a duty requiring the defendant to conform to a certain standard of conduct; (2) the applicable standard of care and its breach; (3) resulting injury; and (4) a reasonably close causal connection between the alleged breach of the standard of care and the alleged injury. *Wheeler v. Aldama–Luebbert,* 707 S.W.2d 213, 217 (Tex.App.—Houston [1st Dist.] 1986, no writ).

Tilotta filed an amended original petition alleging that in the performance of surgery to her cervical spine using the frontal approach, Goodall negligently and permanently injured her thyroid gland "by use of instrumentation and/or hand manipulation." Goodall contends that his motion to reconsider the motion for summary judgment and attached affidavits negate two essential elements of Tilotta's cause of action, namely, breach of duty and proximate cause.

The summary judgment order does not state the specific grounds on which it was granted; therefore, if either ground is sufficiently negated by the evidence, the summary judgment will be upheld. *See McCrea v. Cubilla Condominium Corp.,* 685 S.W.2d 755 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Southerland v. Northeast Datsun, Inc.,* 659 S.W.2d 889 (Tex.App.—El Paso 1983, no writ).

Goodall attached two affidavits to his motion to reconsider summary judgment. In his affidavit, he recited that he was a neurosurgeon who was familiar with cervical spine problems and that he had treated many patients using the same surgery that he performed on Tilotta. He stated that it was the standard medical practice to perform surgery when a patient exhibits problems such as those exhibited by Tilotta. His affidavit also contained an extensive explanation of the surgical procedure that he and Dr. Donald H. Nowlin performed on Tilotta. He asserted that it was the standard practice for an orthopedic surgeon,

such as Dr. Nowlin, to participate in the surgery and perform the fusion aspects of the surgery. The affidavit concluded that:

> [in] reasonable medical probability, my surgical procedure to her neck, utilizing an anterior approach did not cause or contribute to Mrs. Tilotta's subsequent hypothyroidism. In reasonable medical probability, my method of approach through the neck could not and did not destroy the thyroid's right and left lobes as well as its isthmus. Destruction of all of these organ parts is necessary to cause the signs and symptoms evidenced in Mrs. Tilotta's thyroid condition. Furthermore, even if damage to the thyroid occurred on the site of the surgical procedure, which I emphatically deny, the other side of the thyroid in reasonable probability would take up all necessary function. An individual who has part of their thyroid surgically removed usually continues to have normal thyroid function.
>
> I am familiar with the standard of care required of a neurosurgeon in Houston, Harris County, Texas, in September of 1982. Drawing upon my education, training, experience, and expertise, it is my opinion that Dr. Nowlin's and my treatment of Mrs. Tilotta was in full compliance with the standard of care expected of doctors in Houston, Harris County, Texas, in 1982. It is my opinion, based upon a reasonable degree of medical probability, that no act or omission on his or my part caused any injury to Mrs. Tilotta; rather, Mrs. Tilotta's signs and symptoms and thyroid condition are caused by factors unrelated to the surgery.
>
> Finally, it is, my opinion that I was in no way negligent in my treatment of Mrs. Tilotta.

Also attached to the motion to reconsider was the affidavit of Dr. Gerardo Bueso, a specialist in internal medicine and endocrinology. Dr. Bueso based the opinion in his affidavit on his review of Tilotta's medical records from Dr. Reagan Marshall, Memorial City General Hospital, Memorial Southwest Hospital, Dr. Jim Waldron, Dr. Ronald Devere, Dr. Zev M. Munk, Dr. Alfredo L. Viteri, Dr. Larti G. Myers, Dr. P.O. Jones, Dr. Donald Nowlin, Dr. Blossom Zanger, and Dr. Robert J. Goodall, as well as the deposition testimony of Tilotta and Goodall. After reciting his extensive medical background and experience, he stated that the normal and accepted practice and procedure in Harris County for the treatment of person's with Tilotta's symptoms is to have a neurologist treat and diagnose the patient. He stated that:

> Based upon my education, training, experience, and expertise, and my review of the above-listed documents, it is clear beyond reasonable medical certainty that the alleged injury to Mrs. Tilotta's thyroid gland is not related to any act or omission on the part of Dr. Goodall or Dr. Nowlin; rather, her signs and symptoms and thyroid condition are probably caused by an immunological disorder, unrelated to the surgery, known as Hashimoto's thyroiditis.
>
> \*   \*   \*   \*   \*   \*
>
> Based on reasonable medical probability, it is my opinion that the surgical procedure in the neck through an anterior approach was not the cause for subsequent hypothyroidism, or thyroid disfunction.
>
> \*   \*   \*   \*   \*   \*
>
> In sum, for the surgical procedure to be the likely cause of Mrs. Tilotta's condition, there would have to have been destruction of both the right and left lobes of the thyroid glands as well as its isthmus. In reasonable medical probability, this did not occur.
>
> In conclusion, Dr. Goodall's treatment of Mrs. Tilotta's neck and back problems did not cause or contribute to her hypothyroidism or thyroid gland disfunction. Drawing upon my education, training, experience, and expertise, it is my opinion that Dr. Goodall's treatment of Mrs. Tilotta was appropriate under the circumstances. It is my opinion, based upon a reasonable degree of medical probability, that no act or omission on the part of Dr. Goodall or Dr. Nowlin caused any injury to Mrs. Tilotta's thyroid gland.

■ Although the burden of proof in a summary judgment proceeding is on the movant, the non-movant must expressly present to the trial court any grounds seeking to avoid movant's entitlement, and he cannot urge on appeal as a reason for reversal of the summary judgment a new ground, nor can he resurrect grounds that he abandoned at the hearing. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). Thus, a non-movant must present any ground that would defeat the movant's right to a summary judgment by filing a written answer or response to the motion, and if he fails to do so, he may not later assign them as error on appeal. *Id.* at 679. However, a non-movant needs no answer or response to the motion to contend on appeal that the grounds expressly presented to the trial court by the summary judgment motion are insufficient as a matter of law to support the judgment. *Id.* at 678.

Goodall filed his original motion for summary judgment on March 6, 1987. On March 30, 1987, Tilotta filed her response to the motion. The trial court denied the original motion for summary judgment, and Goodall then filed a motion to reconsider motion for summary judgment. The motion to reconsider stated that it was based on the pleadings, the attached affidavits of Goodall and Bueso, and the prior motion for summary judgment and attached affidavit of Goodall.

Tilotta's response incorporates Dr. Goodall's deposition testimony, her own deposition testimony, and medical records from various doctors. However, the medical records from Dr. Marshall, Memorial Hospital Southwest, Memorial City Medical Center, Dr. Nowlin, and Dr. Viteri, were the only records that were properly authenticated at the time that summary judgment was entered. *See* Tex.R.Civ.P. 166a (c); *Republic Nat'l Leasing Corp. v. Schindler*, 717 S.W.2d 606 (Tex.1986). The other medical records are not supported by affidavits stating that the records are "true and correct" copies of the originals. *Id.* We can presume that the trial court did not consider these records because they were not admissible as proper summary judg-

ment evidence; however, even assuming that he did consider them, we find no evidence in the records that would create a fact issue regarding proximate cause or breach of duty.

The deposition testimony of Goodall establishes the standard of care required of him in this surgical procedure. Evidence of a violation of that standard is not present.

The evidence most favorable to Tilotta that would raise a material fact issue regarding "breach of duty" and "proximate cause" is Tilotta's hearsay statement that both Dr. Munk and Dr. Viteri told her that Goodall's surgery caused the thyroid damage, and Goodall's deposition testimony that it was possible to injure the thyroid during retraction.

The hearsay testimony was objected to in the motion to reconsider on which the judgment was granted. In support of his judgment, it is presumed that the trial court sustained the objection, if in fact, the hearsay testimony was of probative force as lay witness testimony. However, it is well settled that in a medical malpractice action, negligence and proximate cause are elements that must be proven by expert testimony. *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex.1965); *Rodriguez v. Reeves*, 730 S.W.2d 19, 21 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). Lay witness testimony about negligence and proximate cause has no probative force in a medical malpractice action. *See Duncan v. Horning*, 587 S.W.2d 471, 474 (Tex.Civ.App.—Dallas 1979, no writ).

■ Moreover, the excerpts from Goodall's deposition, regarding the possibility of injury to the thyroid during retraction, relate to medical possibilities and not reasonable medical probabilities. The mere possibility that an act of negligence might have been the proximate cause of damages from a medical viewpoint is not sufficient to support recovery. *Valdez v. Lyman–Roberts Hosp., Inc.*, 638 S.W.2d 111 (Tex. App.—Corpus Christi 1982, writ ref'd n.r. e.); *Bellaire Gen. Hosp., Inc. v. Campbell*, 510 S.W.2d 94 (Tex.Civ.App.—Houston

[14th Dist.] 1974, writ ref'd n.r.e.). It is essential that the evidence show at least a reasonable medical probability that Tilotta's thyroid disfunction was caused by Goodall's negligence. *See Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706 (Tex.1970). Although a fact issue may be presented if conflicting inferences may be drawn from two statements made by the same witness, one in an affidavit and the other in a deposition, *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557 (1962), we find no conflict in the instant case because the deposition speaks in terms of possibilities while the affidavit is phrased in terms of reasonable medical probabilities.

■ Tilotta also contends that Goodall's and Bueso's affidavits are insufficient as a matter of law. First, she asserts that Goodall's affidavit does not contain the standard of care and does not controvert her evidence that the standard of care was violated. Second, she claims that Bueso's affidavit is defective because it is based on a review of the medical records; because it does not contain the standard of care; because Bueso had no personal knowledge of the events; and because it does not negate the deposition testimony of Goodall that it is possible to injure the thyroid during retraction.

Goodall's affidavit sets out his qualifications, described the surgery that he performed on Tilotta, and stated that he was familiar with the standard of care required of a neurosurgeon in Houston, Harris County, Texas, in September of 1982. His affidavit established that he had treated hundreds of patients with neck and back problems, and that "it is the standard of medical practice to perform surgery such as [he] did when a patient presents with [sic] the problems experienced by Mrs. Tilotta." His affidavit also asserted that he complied with the standard of care in his treatment of Tilotta that was expected of doctors in Houston, Harris County, Texas, in 1982. In addition, Goodall denied the allegations of negligence in Tilotta's amended original petition, and stated that in reasonable medical probability his entry through the neck, utilizing the anterior approach, did not cause or contribute to Tilotta's subsequent hypothyroidism. He stated, in his opinion based on a reasonable degree or medical probability, that no act or omission on his part caused any damage to Tilotta. *Compare Wheeler v. Aldama–Luebbert*, 707 S.W.2d 213 (Tex.App.—Houston [1st Dist.] 1986, no writ); *Milkie v. Metni*, 658 S.W.2d 679 (Tex.App.—Dallas 1983, no writ).

The evidence furnished by the affidavit is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and the subject matter is such that the trier of fact must be guided solely by the opinion testimony of an expert. Tex.R.Civ.P. 166a (c); *Hart v. Van Zandt*, 399 S.W.2d at 792. Moreover, the statements in Goodall's affidavit could have readily been controverted by an affidavit from Dr. Munk or Dr. Viteri. Tilotta's deposition testimony is insufficient to raise a fact issue because mere conclusions by a lay witness are insufficient to controvert expert opinion evidence. *See Duncan v. Horning*, 587 S.W.2d at 474.

The requirement for the standard of care, established by the Texas Supreme Court in *Hood v. Phillips*, 554 S.W.2d 160, 165 (Tex.1977), is as follows: "A physician who undertakes a mode or form of treatment which a reasonable and prudent member of the medical profession would undertake shall not be subject to liability for harm caused thereby to the patient." The standard of care articulated in Goodall's affidavit is sufficient.

Goodall's testimonial evidence is corroborated by the affidavit of Dr. Bueso, a specialist in internal medicine and endocrinology. Dr. Bueso was furnished with all of Tilotta's medical records and the depositions in the case, and was able to form a definite opinion regarding Tilotta's treatment by Goodall and her subsequent development of a thyroid condition. Because the affidavit contained recitations showing how the affiant became personally familiar with the facts so as to testify as a witness, the affidavit shows the requisite degree of personal knowledge. *See Jackson T. Fulgham Co., Inc. v. Stewart Title Guaranty*

*Co.,* 649 S.W.2d 128 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); Tex.R.Civ.Evid. 702, 703. Moreover, Tilotta did not challenge Dr. Bueso's competency as an expert at the trial court, and therefore, waived any right to challenge his competency on appeal. *See City of Asherton v. Trigo,* 714 S.W.2d 90 (Tex.App.—San Antonio 1986, no writ).

Dr. Bueso's affidavit sets forth his qualifications, the normal and accepted procedures for the medical community for treatment of persons with Tilotta's problems, and a summary of the medical treatment that Tilotta received. He stated that in his opinion, based on a reasonable degree of medical probability, Tilotta's condition was caused by an immulogical disorder, and not by any act or omission on the part of Goodall. He also asserted that the anterior approach through the neck that was employed by Goodall was a medically accepted procedure, and that the surgery did not cause Tilotta's thyroid problems. After a review of the medical records, he claimed that the existence of positive anti-microsomal antibody titers indicated that, in all reasonable medical probability, Tilotta suffers from Hashimoto's thyroiditis. Bueso found that Tilotta's sex, age, and family history made her a likely candidate for Hashimoto's thyroiditis.

Although Tilotta testified in deposition that she had no family history of thyroid disfunction, her medical records indicate that both her brother and her niece "have had their thyroid ablated with radioactive iodine." This is a disputed fact issue, but it is not a "material fact." Tex.R.Civ.P. 166a (c). Goodall's summary judgment evidence has negated proximate cause and breach of duty; therefore, Tilotta has the burden to introduce evidence that raises issues of fact with respect to these elements. *Federated Dept. Stores, Inc. v. Houston Lighting & Power Co.,* 646 S.W. 2d 509, 511 (Tex.App.—Houston [1st Dist.] 1982, no writ).

Tilotta argues that a fact issue is raised by circumstantial evidence. She cites *Williams v. Bennett,* 610 S.W.2d 144 (Tex.1980), which held that the defendant doctor's own testimony that it would be

bad medical practice to dismiss a patient during the course of virulent infectious process established the requisite standard of medical care by which his actions in discharging the patient should be judged. The case before us simply does not have evidence of some standard of post-operative events that prove negligent surgical procedure, and the time frame between the surgery and the onset of symptoms is too remote to support a fact issue about proximate cause when two doctors' affidavits conclusively establish an absence of proximate cause.

The uncontroverted expert testimony establishes that, based on reasonable medical probability, the surgery performed by Goodall in no way caused Tilotta's subsequent thyroid problems.

Points of error one and two are overruled.

The summary judgment is affirmed.

SMITH and COHEN, JJ., also sitting.