Antonio FLORES and Estella Flores, Appellants,

v.

CENTER FOR SPINAL EVALUATION AND REHABILITATION, Appellee.

No. 07-93-0087-CV.

Court of Appeals of Texas, Amarillo.

Nov. 1, 1993.

---

262

Brock & Person, Stephen L. Dittlinger, Mary M. Devine, San Antonio, for appellants.

Carr, Fouts, Hunt, Craig, Terrill & Wolfe, Donald M. Hunt, Gary M. Bellair, Lubbock, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

BOYD, Justice.

Appellants Antonio Flores (Flores) and his wife Estella, bring this appeal from a take-nothing summary judgment in favor of the Center for Spinal Evaluation and Rehabilitation (Center) in a medical malpractice suit. In one point, they assert the trial court erred in granting the Center summary judgment. For reasons hereinafter expressed, we affirm the judgment of the trial court.

Flores was injured on the job while employed by a meat processing plant. He was referred by his employer to Dr. Mark Nordyke for treatment of the injury to his shoulder. After Nordyke examined Flores, he restricted his activities, prescribed a non-steroidal anti-inflammatory medication, and instructed him to return for additional diagnostics.

Within weeks following his initial examination, Flores underwent various diagnostic studies, including an arthrogram. Although

that test demonstrated no apparent abnormality, Flores told the doctor that the arthrogram left his shoulder sore. Nordyke prescribed physical therapy to alleviate the soreness, and, when the therapy failed to alleviate the soreness, on April 7, 1989, operated on the shoulder.

Shortly after the operation, Nordyke initially referred Flores for informal rehabilitation at the Center for Orthopedic and Sports Physical Therapy.[1] Nordyke subsequently referred Flores to the Center for testing and formal rehabilitation, including BTE rehabilitation and Biodex strengthening of his upper extremities.

An upper extremity evaluation was the first step of Flores's formal rehabilitation. The evaluation consisted of a series of tests that are routinely given to all patients, including those who are known to have back problems.[2] The tests are routinely prescribed by physicians because they provide objective quantitative data on the functional abilities of the patient.

Based upon the results of Flores's evaluation, a conditioning program was devised for rehabilitation of his shoulder. Dr. Bill McCollough, the Center's program director, devised the conditioning program with the assistance of William Lewis (Lewis), a licensed physical therapist who, at the time, was the director of physical therapy at the Center. The program consisted of general conditioning and strengthening exercises, shoulder specific exercises, massage, hot packs, and electrical stimulation.

Flores, who was shown by "a young man and a young girl" how to perform his exercise regimen, was supervised while he exercised. After a few weeks of conditioning, a final upper extremity evaluation of Flores

was conducted under the supervision of Keith Adamson (Adamson), a registered occupational therapist.[3] The final evaluation included a Warren's Static Strength Test which was performed on a static strength ergometer.[4] Prior to initiating the test, Adamson, according to his testimony and affidavit, instructed Flores as to the proper method for performing the test. Although Flores exhibited acceptable body mechanics, he sustained an injury to his back during the test.

The day after Flores completed his final extremity evaluation, he returned to Nordyke for a re-check of his shoulder. During this visit, Flores complained of the back injury he sustained during his final upper extremity evaluation. Nordyke completed his examination of Flores's shoulder and referred him to McCollough for a back examination.

McCollough examined Flores and decided to admit him to the Center for therapy on his back.[5] When Flores continued to complain about back pain despite the therapy, McCollough sent Flores to a psychologist for a psychological examination. Based upon the psychologist's evaluation, McCollough decided to discontinue therapy and discharged Flores from the Center.

McCollough's decision to discharge Flores was later called into question when Dr. Gerald Laros (Laros) concluded that Flores suffered from spondylolysis, a pre-existing condition which rendered him more susceptible to mechanical stress. Laros, having rendered his diagnosis, instructed Flores to return to Fernandes for further treatment.

Continued treatment eventually led to an anterior discectomy with fusion at L4–L5 and L5–S1, a procedure which Fernandes per-

1. The Center for Orthopedic and Sports Physical Therapy utilized the Center's equipment.

2. At the time he was admitted to the Center, Flores had no history of problems with his back. Indeed, his back condition was not diagnosed until after he was discharged from the Center.

3. Notwithstanding some deficits in shoulder strength, the results of the final evaluation, when compared with the results of the initial evaluation, indicated that Flores made gains in his rehabilitation.

4. Such tests are routinely prescribed because they provide objective quantitative data which is useful in determining whether a patient has achieved maximal medical improvement.

5. Flores arranged for an appointment to have his back examined by Alex R. Fernandes, M.D. (Fernandes) within days of McCollough's examination. Upon completing that examination, Fernandes concluded that Flores "most likely pulled a muscle in his back."

formed in May of 1990. Flores subsequently filed suit against the Center and McCollough, alleging that they were "negligent in prescribing a rehabilitation exercise regimen which put undue stress on Plaintiff's low back * * * and further negligent in failing to properly advise and/or instruct Plaintiff on the proper manner in which to carry out the exercise regimen." In its judgment, the trial court severed this part of the cause from that against McCollough and the action against him is not before us.

■ Discussion of this appeal requires us to iterate the litany of rules governing the review of a summary judgment. The issue on appeal from a summary judgment is whether the movant established, as a matter of law, his entitlement to the judgment by conclusively proving that no genuine issue of material fact existed as to his cause of action or defense. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); Tex.R.Civ.P. 166a. Evidence favorable to the non-movants must be taken as true; every reasonable inference must be indulged in favor of the non-movants; and any doubts must be resolved in favor of the non-movants. *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ To be entitled to summary judgment as a defendant-movant, the evidence must be sufficient to disprove, as a matter of law, one or more of the essential elements of the plaintiff's cause of action. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991). Such evidence must be clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and capable of being readily controverted. *Gibson v. Methodist Hosp.*, 822 S.W.2d 95, 98 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

■ The parties agree that the four essential elements of a medical negligence cause of action are: (1) a legally cognizable duty requiring conformity to a certain standard of conduct; (2) a failure to conform to the required standard; (3) actual injury; and (4) a reasonably close causal connection between the conduct and the alleged harm. *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex. App.—Houston [1st Dist.] 1988, writ denied). In determining issues of medical negligence, the trier of fact must be guided solely by the opinion evidence of a qualified expert witness. *Gibson v. Methodist Hosp.*, 822 S.W.2d at 98.

■ Citing *Tilotta v. Goodall, supra*, and *Hood v. Phillips*, 554 S.W.2d 160, 165 (Tex. 1977), Flores correctly posits that determining the appropriate standard of care is the threshold question in a medical malpractice case. Further, Flores correctly postulates that the standard must be established so that the factfinder can determine that the alleged act or omission deviated from the standard of care to the degree that it constituted negligence or malpractice.

■ The standard, Flores concludes, is that a medical provider has an obligation to provide treatment which a reasonable and prudent member of the medical profession would have undertaken in the same or similar circumstances. Acknowledging the paucity of Texas authority on the subject, and citing the case of *Meiman v. Rehabilitation Center, Inc.*, 444 S.W.2d 78, 80 (Ky.1969), Flores concludes "that a physical therapist malpractice action is treated exactly like a traditional physician malpractice action." We agree with that premise. If that be true, the elements of negligence, *i.e.*, the failure to meet the applicable standard of care and proximate cause, must be proven by expert testimony. This is true as lay witness testimony on those elements has no probative value in a medical malpractice action. *Tilotta v. Goodall*, 752 S.W.2d at 163; *Duncan v. Horning*, 587 S.W.2d 471, 475 (Tex.Civ. App.—Dallas 1979, no writ); *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex.1965).

The gravamen of the Center's motion for summary judgment was that it was not negligent in prescribing a rehabilitation exercise regimen for Flores, nor in advising or instructing him on the proper manner to carry out the regimen. Additionally, the Center asserted that no alleged negligence on their part was a proximate cause of the injury in question. In support of its motion, the Cen-

ter referred to, and relied upon, Flores's first amended original petition, affidavits of Lewis and Adamson, medical records of the Center, Fernandes, and Nordyke, and depositions of the Flores.

By granting the summary judgment, the trial court necessarily found there was no issue of material fact as to whether the Center acted in conformance with the applicable standard of care, or as to whether Flores's injury was proximately caused by any negligence on the part of the Center.

In arguing that the summary judgment was correct, the Center places primary reliance upon the affidavit testimony of Adamson and Lewis. Each of those affiants set out his qualifications, described the services performed for Flores, stated his familiarity with the standard of care in Lubbock County, denied the allegations of negligence contained in Flores's petition, and opined that the services rendered to Flores were in accord with the applicable standard of care. Each of them also opined, based upon a reasonable medical probability, that no act or omission on their part caused any injury to Flores.

Predictably, Flores challenges the sufficiency of the testimony of these affiants to support the judgment because they are interested witnesses. Rule 166a(c) of the Texas Rules of Civil Procedure provides:

A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, ... as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

Tex.R.Civ.P. 166a(c). *See also Anderson v. Snider*, 808 S.W.2d at 55.

■ Flores recognizes the above rule. However, he contends that the summary judgment evidence, even when viewed in the light most favorable to the non-movant, shows a material fact issue exists as to whether the treating physician or the Center developed Flores's exercise program. If such an issue exists, he posits, the Center

failed to establish, as a matter of law, that it did not breach its duty to Flores to develop an appropriate rehabilitation program. The issue arises, he avers, because of a difference between Lewis's affidavit testimony and his deposition testimony. Flores correctly states the established rule that if conflicting inferences may be drawn between a deposition and an affidavit filed by the same party, a fact issue exists preventing the award of a summary judgment. *Randall v. Dallas Power & Light Co.*, 752 S.W.2d 4, 5 (Tex.1988).

In advancing his argument, Flores focuses upon the affidavits of both Adamson and Lewis which stated that the referring physician, Nordyke, prescribed the formal rehabilitation program. In his affidavit, specifically, Lewis stated:

The *referring physician prescribed the rehabilitation services that were performed on the patient.* The Practice Acts that govern licensed therapist and the policy of the [Spinal] Center disallow testing and rehabilitation without physician prescription. (emphasis added).

That testimony, Flores posits, was controverted by Lewis's deposition testimony regarding the process involved when a referral was made to the Center. In his deposition, Lewis averred that when the Center received a referral, the referring physician would forward the patient's records and history to the Center and McCollough, based upon those records, would "come up with a treatment plan and write specific orders for the therapists to follow." In the deposition, Lewis also stated that he helped McCollough set up such programs.

In his deposition, prior to his testimony about the referral procedure referred to above, when queried whether he worked with doctors in setting up programs, his reply was:

Yeah, routinely a physical therapist can't— you know, we cannot provide any services without a referral from a physician or orders written by a physician, so I frequently work with physicians with that relationship.

Shortly after that reply and also prior to the portion of the deposition relied upon by

Flores, the following colloquy between Lewis and Flores's attorney occurred:

Q: Did I understand you correctly that a patient must be referred to The [Spinal] Center by a physician before they can go there?

A: Yeah.

In his deposition, Adamson testified that the rehabilitation process "would be a team approach beginning with the referring physician, in this case Dr. Nordike (sic), then the evaluation process would be conducted with the therapist involvement, and then a treatment approach would be implemented."

■ We do not believe that the deposition and affidavit testimony are in conflict. Rather, it shows that Flores was referred to the Center by Nordyke for a rehabilitation program to be devised and implemented by the Center. Under the undisputed expert testimony, the program complied with the requisite standard of care.

Flores also contends a material fact issue exists as to whether the Center failed to properly advise him of the appropriate manner in which to perform the rehabilitation program. In his deposition testimony, however, Flores acknowledged that there was a worker from the Center supervising him while he was taking the test during which his back injury occurred. Flores stated that a male instructor "showed [him] how" to do the exercises and explained, in detail, the procedure to use in performing the exercise.[6] Thus, although Flores contends he never received adequate orientation concerning the rehabilitation program, no summary judgment evidence was presented to show that he was not properly instructed how to perform the test in question. Moreover, there was no summary judgment evidence that showed the Center deviated from the applicable standard of care by improperly instructing or administering the test which injured Flores's back.

■ As we have noted, Flores also contends that he did not receive orientation concerning the rehabilitation procedures until August 4, 1989, some three months after he began his rehabilitation program at the Center. However, proof of proximate causation requires evidence of probative force that the negligent act at issue was a substantial factor in producing the injury and, without such negligence, no harm would have resulted. *Portlock v. Perry*, 852 S.W.2d 578, 583 (Tex.App.—Dallas 1993, writ denied). Proximate cause cannot be established by mere guess or conjecture, but must be proved by evidence of probative force. *Id.*

Under the summary judgment evidence, the injury occurred while Flores was performing a routine test in the presence of a therapist who showed him how to perform the test. Thus, even viewed in the light most favorable to Flores, there is nothing in the record demonstrating any failure to *orient* Flores concerning the remainder of the rehabilitation program was a proximate cause of his injury.

For the above reasons, we overrule Flores's point of error and affirm the judgment of the trial court.

■

---

6. Flores acknowledged, in his deposition, that the instructor showed him how to stand and how to hold onto the machine and perform the exercise. He also admitted that he was told to bend his knees, keep his head up, his arms straight and his feet together.