**Mary REYNOLDS and Randy Reynolds, Appellants,**

v.

**Dr. Lynn WARTHAN, Appellee.**

No. 12–93–00295–CV.

Court of Appeals of Texas, Tyler.

March 17, 1995.

Robert A. Goodwin, Center, James J. Zeleskey, Lufkin, for appellants.

William D. Guidry, Nacogdoches, for appellee.

HADDEN, Justice.

This is an appeal from a judgment granting a directed verdict in a medical malpractice case. Mary Reynolds and her husband, Randy Reynolds, ("Appellants") brought suit against Dr. Lynn Warthan ("Warthan") alleging negligence and gross negligence. The trial court granted Warthan's motion for directed verdict and removed the case from the jury. Appellants raise three points of error on appeal. We will affirm.

In March 1991, Mary Reynolds ("Reynolds") began experiencing a problem with itching, so her family doctor referred her to Warthan, a dermatologist. Warthan diagnosed her with scabies and prescribed Kwell lotion, a topical treatment for the condition. He instructed her to apply the lotion before bed for three consecutive nights, and to wash it off the next day after each treatment. Reynolds complied with his instructions, and the lotion cured the scabies.

The day after she completed the treatments, Reynolds began experiencing various symptoms, including tingling and numbness. She was tested by several doctors, and diagnosed with atypical facial pain. However, none of the physicians could determine the cause of her symptoms. As a result, Appellants brought suit against Warthan, alleging negligence and gross negligence in prescribing the medication and in monitoring Reynolds' condition.

The only doctor to testify at trial was Warthan. Warthan testified that he had followed the appropriate standard of care in treating Reynolds with Kwell, and that he had treated other patients with scabies in the same manner without incident. Warthan noted that Kwell had been known to precipitate central nervous system symptoms in premature infants and in patients who had orally ingested the medication; however, he explained that Reynolds' symptoms were related to her *peripheral* nervous system, a completely separate manifestation. When asked if he knew what had caused Reynolds' problem, he replied, "I know that Kwell Lotion did not cause her problem."

Reynolds testified that Warthan had instructed her as to the application of Kwell,

but did not give her any warnings about it. When she asked Warthan if her subsequent symptoms had been caused by Kwell, he told her that he did not think that was her problem. None of her subsequent physicians were able to attribute the symptoms to her usage of Kwell.

At the conclusion of the Appellants' case, the trial court granted Warthan's motion for directed verdict on the grounds that the evidence was legally insufficient to warrant submission to the jury.

In point number one, Appellants contend that the trial court erred in granting the directed verdict since Warthan's testimony established a standard of care, and Reynolds' testimony raised a fact issue regarding a breach of that standard. Warthan claims that the directed verdict was proper since Appellants failed to present any evidence of either breach of standard of care or causation through expert testimony.

A directed verdict is proper only under limited circumstances:

(1) a specifically indicated defect in the opponent's pleading makes it insufficient to support a judgment;

(2) the evidence conclusively proves the movant is entitled to judgment as a matter of law; or

(3) the evidence is legally insufficient to raise an issue of fact.

*Texas Employers Ins. Ass'n v. Duree,* 798 S.W.2d 406, 408 (Tex.App.—Fort Worth 1990, writ denied) (op. on reh'g); *Rowland v. City of Corpus Christi,* 620 S.W.2d 930, 932–33 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). *See also* Tex.R.Civ.P. 268. In reviewing a directed verdict, we must view the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences. *Porterfield v. Brinegar,* 719 S.W.2d 558, 559 (Tex.1986); *White v. Southwestern Bell Tel. Co., Inc.,* 651 S.W.2d 260, 262 (Tex.1983). Furthermore, we must determine if there is any conflicting evidence of probative value that raises a material fact issue. *White,* 651 S.W.2d at 262. If there is any such evidence on any theory of recovery,

a determination of that issue is for the jury. *Id.*

In a medical malpractice action, expert testimony is required to prove negligence or gross negligence unless the form or mode of treatment is a matter of common knowledge, or the matter is within the experience of a layperson. *Hood v. Phillips,* 554 S.W.2d 160, 165–66 (Tex.1977); *Shook v. Herman,* 759 S.W.2d 743, 747 (Tex.App.—Dallas 1988, writ denied). Appellants had the burden to establish from expert testimony: (1) the standard of care, (2) the facts which show that the physician deviated from that standard, and (3) the deviation caused the patient's symptoms. *Rodriguez v. Reeves,* 730 S.W.2d 19, 21 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). Lay witness testimony about negligence and proximate cause has no probative force in a medical malpractice case. *Flores v. Center for Spinal Evaluation and Rehabilitation,* 865 S.W.2d 261, 264 (Tex.App.—Amarillo 1993, no writ); *Tilotta v. Goodall,* 752 S.W.2d 160, 163 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

In the instant case, it is clear that the use of Kwell for treatment of scabies is not a matter of common knowledge, or within the experience of laymen. *See Hood,* 554 S.W.2d at 165–66; *Shook,* 759 S.W.2d at 747. Therefore, the Appellants were required to establish through expert testimony the standard of care, its breach and the causal connection with Reynolds' symptoms. Even if the Appellants could rely upon Warthan's testimony to establish the standard of care for a dermatologist, they have failed to prove through expert testimony that Warthan deviated from that standard of care, and that the deviation caused the resulting symptoms. Reynolds' testimony as a lay witness would not be sufficient on the issue of breach, *see Tilotta,* 752 S.W.2d at 163, and no evidence was presented on the issue of causation. Appellants failed to establish these two essential elements of their case; therefore, the trial court properly granted the directed verdict on the issues of negligence and gross negligence. Point number one is overruled.

In point two, Appellants claim that the trial court erred in excluding the drug manu-

facturer's package inserts for Kwell. During the trial, Appellants attempted to offer the package inserts in an effort to impeach Warthan's testimony regarding the appropriate standard of care. Warthan indicated that he did not recognize the inserts as authority for dispensing Kwell. The trial court sustained Warthan's hearsay objections, and excluded the inserts.

Rule 803(18) provides for the admission of medical publications as an exception to the hearsay rule, and states, in pertinent part, as follows:

> Learned Treatises. To the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination, statements contained in published treatises, periodical, or pamphlets on the subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

An expert witness may properly be impeached by asking whether he or she agrees or disagrees with the statements contained in treatises and scientific materials; however, such cross-examination is limited to publications which the witness recognizes as authoritative or publications upon which the expert has relied. *Carter v. Steere Tank Lines, Inc.*, 835 S.W.2d 176, 182 (Tex.App.—Amarillo 1992, writ denied). The decision whether to admit or exclude evidence is one within the trial court's discretion. *See Champlin Oil & Refining Co. v. Chastain*, 403 S.W.2d 376, 389 (Tex.1965).

The record reflects that Warthan was repeatedly questioned about the package inserts, and he repeatedly denied that they were authoritative. No other expert testimony was offered by Appellants to show that the inserts were reliable authority in the area of prescribing the medication, Kwell. Thus, the trial court did not abuse its discretion in excluding the information contained in the package inserts. *See Carter*, 835 S.W.2d at 182.

Even if the trial court abused its discretion in excluding evidence, this error is not reversible unless it was reasonably calculated to cause and probably did cause a rendition of an improper judgment in the case. *Security State Bank v. Valley Wide Elec. Supply Co.*, 752 S.W.2d 661, 666 (Tex. App.—Corpus Christi 1988, writ denied); *Harrison v. Texas Employers Ins. Ass'n*, 747 S.W.2d 494, 498 (Tex.App.—Beaumont 1988, writ denied). *See also* Tex.R.App.P. 81(b)(1). Evidentiary rulings are not usually reversible unless appellant demonstrates that the whole case turns on the particular evidence excluded or admitted. *See Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 837 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988).

In the instant case, Appellants have not shown that the outcome of the case was affected by the exclusion of the package inserts. The only issue for which the package inserts may have been relevant was the appropriate standard of care. Even if they had been admitted on this issue, the evidence still would have been legally insufficient on the issues of breach and causation. Therefore, the trial court's exclusion of the evidence does not constitute reversible error. Point number two is overruled.

In point three, Appellants claim that the trial court erred in excluding incident reports dealing with Kwell which had been obtained from the Food and Drug Administration. These records contained Adverse Reaction Reports, Drug Experience Reports, and reports from the Adverse Reaction Reporting System ("AARS"). In the caveats preceding the AARS reports, the following warnings appear:

1. for any given report, there is no certainty that the suspect drug caused the reaction. This is because physicians are encouraged to report all suspected adverse drug events, not just those that are known to have been caused by the drug. The event may have been related to an underlying disease for which the drug was given, to other drugs being taken concurrently, or may have occurred by chance at the

same time the suspected drug was taken.

2. accumulated case reports cannot be used to calculate incidence or estimated [sic] of drug risk. They must be carefully interpreted as reporting rates and not occurrence or incidence rates. Comparisons of drug safety cannot be made from these data.

Appellants attempted to offer these reports under the business records exception to the hearsay rule. *See* TEX.R.CIV.EVID. 803(6). The court sustained Warthan's objections, which were based on the lack of relevance and probative value.

As previously discussed in the second point of error, the decision whether to admit or exclude evidence is one within the trial court's discretion. *See Chastain*, 403 S.W.2d at 389. A trial judge may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* TEX.R.CIV.EVID. 403; *Adams v. Valley Federal Credit Union*, 848 S.W.2d 182, 188 (Tex.App.—Corpus Christi 1992, writ denied).

 In the instant case, the court properly excluded the reports since their marginal relevance was outweighed by the danger of confusing and misleading the jury. These documents did not establish a causal link between Kwell and the reported symptoms; rather, they created a suspicion without any medical proof. *Compare Merrell Dow Pharmaceuticals, Inc. v. Havner*, No. 13–92–540–CV —— S.W.2d —— (Tex.App.—Corpus Christi, March 1994) (reh'g pending), slip op. at p. 10, —— S.W.2d at —— n. 14, (trial court excluded Drug Experience Reports ("DERs") as unreliable). In fact, the adverse reaction reports specifically stated that "[s]ubmission of a report does not necessarily constitute an admission that the drug caused the adverse reaction." The caveats to the AARS reports also stated that there is "no certainty that the suspect drug caused the reaction." Based on these circumstances, we find that the trial court did not abuse its discretion in excluding the evidence since any probative value attributable to the documents was outweighed by the danger of undue prejudice.

 In addition, we find that Appellants have failed to carry their burden of showing that the exclusion probably caused the rendition of an improper verdict. *See Harrison*, 747 S.W.2d at 498. *See also* TEX.R.APP.P. 81(b)(1). Even if the reports had been admitted, the evidence would have been legally insufficient since Appellants failed to present expert testimony on the issues of negligence and causation. Therefore, any error in its exclusion would not be reversible. Point number three is overruled.

The judgment of the trial court is **affirmed.**