NUMBER 13-00-00296-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


OSCAR GONZALEZ, INDIVIDUALLY AND ON 

BEHALF OF THE ESTATE OF

ENRIQUE GONZALEZ, ET AL., Appellants,


v.


MCALLEN MEDICAL CENTER, INC. AND 

JOSE E. IGOA, M.D., Appellees. 

 




On appeal from the 92nd District Court of Hidalgo County, Texas.

 


MEMORANDUM OPINION ON REMAND


Before Justices Yañez, Rodriguez, and Dorsey (1)

Memorandum Opinion on Remand by Justice Yañez 




 In this medical negligence case, a jury returned a take-nothing judgment against
appellants (2) and in favor of appellees, McAllen Medical Center, Inc. ("the hospital) and Jose
E. Igoa, M.D. On remand, we affirm. 

I. Procedural Background 


 Appellants appealed the trial court's rejection of their claims. By six issues, they
challenged the factual sufficiency of the jury's liability findings, and by a seventh issue, the
legal sufficiency of the jury's finding that the decedent, Enrique Gonzalez, did not suffer a
serious, permanent, and disabling injury. In a memorandum opinion, this Court rejected
appellants' sufficiency challenges and affirmed the trial court's judgment. (3)

 Appellants appealed to the Texas Supreme Court. The supreme court 
acknowledged that if a court of appeals affirms a challenged jury verdict as being
supported by factually sufficient evidence--as this Court did--the court need not detail all
the evidence in support of the verdict. (4) Nonetheless, the supreme court found that
appellants were "entitled to more" than this Court's "conclusory" opinion, and reversed and
remanded, with instructions that we should "stat[e] why the jury's verdict can or cannot be
set aside." (5) Accordingly, we proceed to explain the "basic reasons" for our decision. (6) 

II. Standards of Review 


 When reviewing a challenge to the legal sufficiency of the evidence, we "view the
evidence in the light most favorable to the verdict, crediting favorable evidence if
reasonable jurors could, and disregarding contrary evidence if reasonable jurors could
not." (7) The test for legal sufficiency is whether the evidence would enable reasonable and
fair-minded people to reach the judgment being reviewed. (8)

 In reviewing factual sufficiency, we must weigh all of the evidence in the record. (9)
Findings may be overturned only if they are so against the great weight and preponderance
of the evidence as to be clearly wrong and unjust. (10) 


III. Discussion 


A. Negligence 


 By their first issue, appellants challenge the factual sufficiency of the evidence
supporting the jury's negative findings as to the liability of the hospital and Dr. Igoa. 
Specifically, as to the hospital and Dr. Igoa, the jury answered "no" to the following
question: "Did the negligence, if any, of Defendants, or one of them, constitute a proximate
cause of the occurrence in question?" In several sub-issues, appellants argue that
appellees were negligent in: (1) admitting Gonzalez to the hospital because the hospital
had exceeded its patient limit; (2) admitting Alberto Padilla, who had a history of violence
as a patient; (3) transferring Gonzalez to the locked unit of the hospital; (4) failing to protect
Gonzalez by providing treatment to Padilla in a separate environment; and (5) failing to
adequately treat Gonzalez after he was beaten by Padilla. 

 The four elements of a medical negligence cause of action are: (1) a legally
cognizable duty requiring conformity to a particular standard of care; (2) a failure to
conform to the required standard; (3) actual injury; and (4) a reasonably close causal
connection between the conduct and the alleged harm. (11)

 The jury heard evidence that at the time of the incident, the hospital had three
additional patients over its limit, but had additional staff available to take care of the extra
patients. Padilla was transferred to the hospital from a nursing home because his 
psychiatric condition was severe and hospitalization allowed for better treatment and
monitoring of his condition. With regard to Gonzalez's transfer to the locked unit of the
hospital, a nurse testified that Gonzalez appeared to be disoriented and confused, and that
he attempted several times to leave the hospital; he was transferred to the locked unit
because of concern for his safety. As to appellants' claim that Padilla should have been
treated separately, the jury heard evidence that (1) Padilla's symptoms did not justify
segregating him from other patients; (2) nurses observed Padilla sitting quietly in his room 
a few minutes before the incident; (3) nurses observed Gonzalez and Padilla at fifteen-minute intervals before the incident; and (4) Padilla had shown no signs of aggression
while at the hospital. As to Gonzalez's post-injury care, the jury heard evidence that after
the incident, Dr. Igoa asked a trauma specialist to assess Gonzalez's condition;
Gonzalez's treatment was assumed by the trauma specialist and two internal medicine
specialists. With regard to proximate causation, we conclude the jury heard evidence that
Padilla's actions were not foreseeable. We hold there was sufficient evidence to support
the jury's negative findings as to appellees' negligence and proximate causation. We
overrule appellants' first issue.

B. Premises Defect 


 By their second issue, appellants contend the evidence was factually insufficient to
support the jury's finding that the hospital was not negligent with respect to a premises
defect. Appellants' "defect" claim was based on allegations that the hospital was
overcrowded, had inadequate facilities, no security, and that it allowed Padilla on the
premises. 

 When a party is an invitee, the elements of a premises liability claim are: (1) actual
or constructive knowledge of a condition on the premises by the owner or occupier; (2) the
condition posed an unreasonable risk of harm; (3) the owner or occupier did not exercise
reasonable care to reduce or eliminate the risk; and (4) the owner or occupier's failure to
use such care proximately caused the plaintiff's injury. (12) As noted, there was evidence
that: (1) the number of hospital staff exceeded any regulatory requirements; (2) Padilla
and Gonzalez were being observed at fifteen-minute intervals; (3) hospital security would
not have prevented the incident; and (4) Padilla's symptoms did not justify any further
restraint. We hold there was factually sufficient evidence to support the jury's finding that
the hospital was not negligent with respect to a premises defect. 




C. Negligence Per Se 

 By their third issue, appellants challenge the jury's negative finding on question
three, which was based on allegations that the hospital was negligent per se. Question
three asked whether the hospital was negligent by exceeding its patient limit, failing to have
adequate seclusion and treatment rooms, and failing to provide Gonzalez with all rights
under the Patient Bill of Rights, (13) and whether such negligence proximately caused the
incident. 

 "Negligence per se is a tort concept whereby a legislatively imposed standard of
conduct is adopted by the civil courts as defining the conduct of a reasonably prudent
person." (14) Generally, the litigant alleging negligence per se as a ground of recovery must
assume the burden of proving a statutory violation. (15) A typical charge first asks whether
the alleged tortfeasor actually violated the statute in question, and secondly, whether the
violation proximately caused the accident to occur. (16) 

 We have determined that there was factually sufficient evidence to support a
conclusion that the hospital's patient overload did not proximately cause the incident
because there was adequate staff to deal with the extra patients. The hospital had a room
available for intensive treatment, but Padilla's symptoms did not justify using the intensive
treatment room. Similarly, the hospital had a seclusion room available, but Padilla's
symptoms did not justify placing him in seclusion. We hold there was factually sufficient
evidence to support the jury's finding that the hospital's alleged deficiencies did not
constitute negligence that proximately caused the incident. We overrule appellants' third
issue.

D. Informed Consent 


 By their fourth issue, appellants challenge the jury's finding that the hospital and Dr.
Igoa did not fail to obtain Gonzalez's informed consent regarding the risks incident to
treatment in the locked unit of the hospital. 

 In Texas, the duty to obtain informed consent is a nondelegable duty imposed solely
upon the treating doctor. (17) An action alleging a physician's failure to obtain a patient's
informed consent is a suit based on negligence. (18) Traditional notions of liability in
negligence actions require a finding of a duty, a breach of that duty, the breach was a
proximate cause of injuries, and that damages occurred. (19) The inquiry must be whether
a reasonable person, not a particular plaintiff, would have consented to the treatment or
procedure had he been fully informed of all inherent risks which would influence his
decision. (20) Only in this way may a plaintiff establish that the failure to obtain informed
consent was a proximate cause of his injuries. (21) 

 A nurse testified that prior to the incident, she told a member of Gonzalez's family
that Gonzalez had been moved to the secure unit because he seemed confused and had
been wandering around attempting to leave the hospital. Appellants point to no evidence
showing that under these circumstances, a reasonable person would have refused to be
transferred to the secure unit. We conclude that the jury's negative finding regarding the
lack of informed consent was not against the great weight and preponderance of the
evidence. We overrule appellants' fourth issue. 

E. Patient's Bill of Rights 


 By their fifth issue, appellants challenge the jury's negative answer to the following
question: "Did Defendants, or one of them, fail to comply with the Patient's Bill of Rights
and was such failure was [sic] a proximate cause of the occurrence in question?"
Appellants contend the following patient rights of Gonzalez were violated: (1) the right to
be "protected from harm"; (2) the right to receive treatment in the least restrictive manner
available; and (3) the right to be protected from mistreatment, abuse, neglect, and
exploitation. (22) As discussed above, the jury heard evidence that Gonzalez was moved to
the locked unit for his own safety and that the locked unit of the hospital was the least
restrictive treatment setting. Appellants have identified no evidence that any of the
decisions regarding Gonzalez's treatment proximately caused the incident. We overrule
appellants' fifth issue.

F. Ostensible Agent 


 By their sixth issue, appellants challenge the jury's finding that Dr. Igoa was not an
ostensible agent of the hospital. Over the hospital's objection, the jury was asked to
determine whether Dr. Igoa was an agent of the hospital. We agree with the hospital that
this issue is moot; the existence of an agency relationship is relevant only as to whether
the hospital may be held vicariously liable for any wrongdoing by Dr. Igoa. The jury,
however, found that Dr. Igoa was not found liable under any theory of recovery. We
overrule appellants' sixth issue. 

G. Gonzalez's Injury 


 By their seventh issue, appellants challenge the legal sufficiency of the jury's
negative answer to the following question: "Was the physical injury to Mr. Enrique
Gonzalez a serious, permanent, and disabling injury?" Appellants contend that the
evidence establishes as a matter of law that Gonzalez's injuries were serious, permanent,
and disabling. There was evidence that Gonzalez recovered from his hip fracture, was
improving, and was able to walk short distances. The jury heard evidence that the
deterioration of his health was due to other conditions, including advanced Alzheimer's
disease, pneumonia, infections, and heart disease. We conclude there was evidence to
support the jury's finding that Gonzalez did not suffer a permanent or disabling injury due
to the incident. We overrule appellants' seventh issue.

Conclusion 


 Having overruled appellants' issues, we affirm the trial court's judgment. 

 

 LINDA REYNA YAÑEZ,

 Justice



Memorandum Opinion on Remand delivered and 

filed this the 29th day of October, 2009.

1. Retired Justice J. Bonner Dorsey, who concluded his term of office on December 31, 2002, was
assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann.
§ 74.003 (Vernon 1998). Justice Dorsey did not participate in this memorandum opinion on remand. See
Tex. R. App. P. 41.1(c).
2. Appellants are Oscar Gonzalez (individually and on behalf of the estate of Enrique Gonzalez,
deceased), Emma Gonzalez, Enrique Gonzalez, Jr., Armando Gonzalez, Ricardo Gonzalez, and Hector
Gonzalez. 
3. Gonzalez v. McAllen Med. Ctr., Inc., No. 13-00-296-CV, 2003 Tex. App. LEXIS 4732, at *7-8 (Tex.
App.-Corpus Christi June 5, 2003) (mem. op.), rev'd and remanded, 195 S.W.3d 680 (Tex. 2006) (per
curiam). 
4. Gonzalez, 195 S.W.3d at 681; see In re Columbia Med. Ctr. of Las Colinas, 52 Tex. Sup. Ct. J. 1016,
2009 Tex. LEXIS 476, at *16 (Tex. July 3, 2009) (orig. proceeding). 
5. Gonzalez, 195 S.W.3d at 681-82. 
6. See Tex. R. App. P. 47.4; Gonzalez, 195 S.W.3d at 681 (noting that "a memorandum opinion
generally should focus on the basic reasons why the law applied to the facts leads to the court's decision."). 
7. City of Keller v. Wilson, 168 S.W.3d 802, 807, 827 (Tex. 2005); Villagomez v. Rockwood Specialties,
Inc., 210 S.W.3d 720, 748 (Tex. App.-Corpus Christi 2006, pet. denied). 
8. City of Keller, 168 S.W.3d at 827-28.
9. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996).
10. Id. 
11. Flores v. Ctr. for Spinal Evaluation & Rehab., 865 S.W.2d 261, 264 (Tex. App.-Amarillo 1993, no
writ); see also Doege v. Sid Peterson Mem. Hosp., No. 04-04-570-CV, 2005 Tex. App. LEXIS 4964, at *6
(Tex. App.-San Antonio June 29, 2005, pet. denied) (mem. op.). 

12. See Doege, 2005 Tex. App. LEXIS 4964, at *25 (citing CMH Homes, Inc. v. Daenen, 15 S.W.3d
97, 99-100 (Tex. 2000); Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998); Star Enterprise
v. Marze, 61 S.W.3d 449, 461 (Tex. App.-San Antonio 2001, pet. denied)). 
13. Appellants' claim that overwhelming evidence supports the assertion that the hospital and Dr. Igoa
violated the Patient Bill of Rights is addressed in appellants' fifth issue. 
14. Carter v. William Sommerville & Son, Inc., 584 S.W.2d 274, 278 (Tex. 1979). 
15. Moughon v. Wolf, 576 S.W.2d 603, 604 (Tex. 1978). 
16. Id. 
17. Espalin v. Childrens Med. Ctr., 27 S.W.3d 675, 686 (Tex. App.-Dallas 2000, no pet.). 
18. McKinley v. Stripling, 763 S.W.2d 407, 409 (Tex. 1989). 
19. Id. 
20. Id. at 410. 
21. Id. 
22. Although appellants do not identify the statute, Texas has enacted a Patient Bill of Rights. See Tex.
Health & Safety Code Ann. § 321.002 (Vernon 2001). Section 321.002 requires that the Texas Department
of Mental Health and Mental Retardation and the Texas Commission on Alcohol and Drug Abuse "protect the
health, safety, and rights of a patient receiving voluntary or involuntary mental health, chemical dependency,
or comprehensive medical rehabilitation services in an inpatient facility." Id. § 321.002(a).