Connolly v. TCB 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-93-612-CV





DOUG CONNOLLY,



 APPELLANT

vs.



TEXAS COMMERCE BANK-AUSTIN, N.A.,



 APPELLEE

 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT



NO. 91-11798, HONORABLE MARGARET COOPER, JUDGE PRESIDING



 




 Doug Connolly, appellant, sued Texas Commerce Bank-Austin, N.A. ("TCB"),
appellee, on various theories of recovery arising out of TCB's drawing on a letter of credit. The
trial court granted summary judgment for TCB on all claims. Connolly appeals, asserting the
existence of fact issues. We will reverse and remand.


FACTUAL AND PROCEDURAL BACKGROUND



 In August of 1985, Connolly and Gilford Johnson borrowed $172,000 from TCB
for a real estate development. The loan was evidenced by a promissory note ("the Note") dated
August 13, 1985, maturing in one year. As part of this transaction, TCB required Connolly to
secure a $10,000 standby letter of credit, naming TCB as beneficiary. The letter of credit had an
expiry date of August 31, 1987. In order to draw on the credit, one of the documents TCB was
required to present to the issuer was an affidavit stating that "default has occurred on a certain
loan executed by Doug Connolly and payable to Texas Commerce Bank in the amount of
$172,000.00." In 1986 Connolly and Johnson negotiated an extension on the Note until August
13, 1987. In August 1987 Connolly extended his letter of credit for another year, to expire
August 31, 1988.

 In the summer of 1987 Connolly negotiated with a third party, Bert Pence, to
assume Connolly's obligations under the Note. These negotiations culminated in a September 29,
1987, meeting at which three critical documents were executed ("the September 29th
Agreements"). First, TCB signed a Release discharging Connolly from "any and all obligations,
liabilities and duties now existing or hereafter arising from or in connection with the indebtedness
evidenced by the $172,000 Note . . . and any and all instruments securing payment of any or all
of the same." This Release was effective September 2, 1987. In addition, Johnson, Pence, and
TCB signed a Renewal and Extension Agreement extending the Note until August 13, 1988. The
Renewal and Extension Agreement likewise recited that pursuant to the Release, Connolly "will
be released and discharged from all his obligations, liabilities and duties under the terms of the
Note and all other Loan Documents." Finally, Connolly, Johnson, Pence, and TCB signed an
Assumption Agreement whereby Pence, on behalf of Capital City Warehousing, Inc., assumed
Connolly's obligations under the Note. This agreement, effective August 13, 1987, states that
"Assumptor hereby assumes and agrees to fulfill all obligations of the Borrower, whether accrued
or contingent, under the Note, the Deed of Trust and all other Loan Documents." The agreement
also provided: "Nothing herein shall in any manner affect, impair or extinguish the Note or the
liens and security interests securing the payment of the same, and said liens and security interest
are not waived. All security for the Note shall be taken and held as cumulative."

 In August 1988, when the Note had been neither paid nor renewed, TCB contacted
Connolly and, despite the Release, told him to renew the letter of credit or it would be cashed. 
On August 24, Connolly acquiesced and renewed the letter of credit. This renewal extended the
credit until August 31, 1989. When the letter of credit was about to expire in August 1989, TCB
again contacted Connolly and told him to renew the instrument or it would be cashed. This time,
however, Connolly refused. Following this conversation, TCB presented the letter of credit,
accompanied by the other required documents, to the issuing bank for payment. The bank
complied, then demanded repayment from Connolly. Connolly sued TCB for breach of the
presentment warranty of the letter of credit under the Deceptive Trade PracticesConsumer
Protection Act (DTPA), Tex. Bus. & Com. Code Ann. § 17.50(a)(2) (West 1987) and Tex. Bus.
& Com. Code Ann. § 5.111(a) (Tex. UCC) (West 1968). Connolly also alleged fraud,
misrepresentation, breach of contract, and unconscionable conduct, premised on the argument that
he had been completely released from any obligations connected with the Note, including any
obligation to provide and maintain a letter of credit. The district court granted TCB's motion for
summary judgment as to all of Connolly's claims.


DISCUSSION


 The standards for reviewing a summary judgment are well established: (1) the
movant for summary judgment has the burden of showing that there is no genuine issue of
material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there
is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the
nonmovant and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985). 

 At the core of this dispute is whether, as part of the September 29th Agreements,
TCB released Connolly from his obligation to maintain the letter of credit. To resolve this, it is
necessary to determine what the parties intended when they executed the September 29th
Agreements. We do not believe the documents themselves are conclusive on the issue, because
they contain provisions giving rise to conflicting inferences.

 That leaves as the primary basis for decision the parties' subjective knowledge and
intent, which are generally not susceptible to being readily controverted, making summary
judgment inappropriate. See Allied Chem. Corp. v. DeHaven, 752 S.W.2d 155, 158 (Tex.
App.Houston [14th Dist.] 1988, writ denied); Hunt v. Van Der Horst Corp., 711 S.W.2d 77,
79 (Tex. App.Dallas 1986, no writ). The summary judgment proof in this case brings it
squarely within this rule. Connolly contends that the parties intended to remove any obligation
he had under the Note, including maintenance of the letter of credit. In his affidavit, Connolly
states that the documents were signed contemporaneously by all parties, including TCB, and
"contemplated my release from all obligations thereunder to TCB." Further, Connolly points to
the release language in the September 29th Agreements for proof of this intent. Each document
includes language that Connolly is released from all obligations arising from the Note and all
related documents. Connolly's deposition testimony is consistent. When originally asked to
renew the letter of credit in 1988, Connolly said, "Call Pence. I'm off the hook; call Pence, and
it's his baby now." When asked directly if he believed TCB had the right to draw on the letter
of credit, Connolly responded, "It was my understanding that they [TCB] did not have the right
to do it at that time." Connolly explains in his affidavit that he reluctantly renewed the letter of
credit in August 1988 to avoid complicating on-going legal problems with the bank that had issued
the letter of credit.

 Likewise, Gilford Johnson states by affidavit that Capital City Warehousing, Inc.
assumed all of the obligations, liabilities, and duties Connolly owed to TCB. Johnson explains:
"It was my intent that after TCB executed the Assumption Agreement, released Doug and Susan
Connolly, and named the Corporation as the `Borrower,' Mr. Connolly no longer had any
obligations to TCB or the Corporation." 

 Even TCB admits, both in its brief and at oral argument, that it had no legal right
to force Connolly to renew the letter of credit. TCB maintains, however, that it had the right to
draw on the credit. TCB asserts that the parties intended to release only Connolly's personal
obligations, not the underlying security for the Note. TCB characterizes the letter of credit as
"security," as opposed to one of the personal obligations from which Connolly was released. In
addition, TCB contends that there is no evidence it ever made any misrepresentations to Connolly
regarding the letter of credit. The bank points to Connolly's deposition testimony where he states
that he did not remember any conversations with anyone at TCB about the conditions under which
the bank would draw on the letter of credit. This evidence, however, conflicts with Connolly's
affidavit, where he maintains that he was contacted in August 1988 by an officer of TCB and told
to renew the letter of credit. Connolly states, "I was pressured and coerced by the threats made
by agents and officers of TCB and reluctantly renewed the Letter of Credit." When conflicting
inferences can be drawn from a deposition and an affidavit filed by the same party in opposition
to a summary judgment motion, a fact issue is presented. Randall v. Dallas Power & Light Co.,
752 S.W.2d 4, 5 (Tex. 1988).

 We conclude, therefore, that a fact question exists as to the parties' intent when
TCB released Connolly and allowed Pence to assume Connolly's obligations. Resolution of this
fact issue is vital to all of Connolly's claims. If TCB did not release Connolly from the letter of
credit, it could not have breached the September 29th Agreements when it drew on the credit. 
Likewise, if TCB still had the right to draw on the credit, any representations made to Connolly
describing this right could not support a claim for fraud, misrepresentation, breach of warranty,
or unconscionable conduct. However, TCB has not met its burden to prove as a matter of law
that the parties intended the letter-of-credit obligation to survive after they entered into the
September 29th Agreements.

 TCB also argues that summary judgment is appropriate at least as to the DTPA
claims because, as a matter of law, Connolly was not a "consumer" under the act. For purposes
of the DTPA, a consumer is an individual who seeks or acquires, by purchase or lease, any goods
or services. Tex. Bus. & Com. Code Ann. § 17.45(4) (West 1987). TCB argues that it is entitled
to judgment as a matter of law based on the supreme court's holding in Riverside National Bank
v. Lewis, 603 S.W.2d 169, 174-75 (Tex. 1980), that the mere borrowing of money is not an
acquisition of services conferring consumer status under the DTPA.

 While the determination of whether one is a consumer for DTPA purposes is often
a question of law, factual disputes concerning the issue of consumer status can exist, rendering
summary judgment inappropriate. See, e.g., Juarez v. Bank of Austin, 659 S.W.2d 139, 142
(Tex. App.Austin 1983, writ ref'd n.r.e.) (reversing summary judgment where summary
judgment proof reflects the bank provided credit insurance in addition to loans); Fortner v. Fannin
Bank, 634 S.W.2d 74, 76-77 (Tex. App.Austin 1982, no writ) (reversing summary judgment
for failure to establish conclusively that plaintiff was not a consumer of the bank's titling service);
see also Precision Sheet Metal Mfg. Co. v. Yates, 794 S.W.2d 545, 551 (Tex. App.Dallas 1990,
writ denied). This is one of those situations. The summary judgment evidence raises a fact issue
as to whether the services provided by TCB extend beyond the mere lending of money. Indeed,
Connolly's complaint is not with the lending stage of the transaction, but with TCB's conduct
during and after its preparation of the Assumption Agreement, Release, and Renewal and
Extension Agreement. Connolly states in his affidavit that he "sought and acquired the services
of TCB for the assumption by others of all of my obligations to TCB, release of my wife and me
from our obligations to TCB, and documentation of the complete transaction." This, coupled with
the September 29th Agreements themselves, reflects a fact issue as to whether TCB provided
services other than the mere lending of money. TCB counters that even if the bank provided
services at the assumption stage, Connolly did not "purchase or lease" these services. However,
the Assumption Agreement itself states that the agreement was a product of "good and valuable
consideration, the receipt and sufficiency of which are hereby acknowledged and confessed." On
this record, TCB has not met its burden of establishing the absence of a material fact issue
regarding Connolly's consumer status under the DTPA.



CONCLUSION


 We conclude that the record neither shows that there is no genuine issue as to any
material fact, nor shows that TCB is entitled to judgment as a matter of law. The judgment of the
trial court is reversed and the cause is remanded for further proceedings.


 J. Woodfin Jones, Justice

Before Justices Aboussie, Jones and Kidd

Reversed and Remanded

Filed: October 19, 1994

Do Not Publish